Fuld, J.
The plaintiff, as beneficiary, brought this action against defendant Metropolitan Life Insurance Company and defendant Levy, one of the company’s agents, to recover death and accidental death benefits under a policy on the life of her husband. The defendant company opposed payment on the grounds that the policy had lapsed without value because of the nonpayment of a premium and that, in any event, the plaintiff was not entitled to accidental death benefits since the insured had died, not as the result of accident, but of natural causes. The plaintiff, not disputing that there was a failure to pay the premium when due, argues that the Metropolitan, by requesting payment of the next quarterly premium, waived the failure to pay the earlier premium. In addition, she seeks to hold defendant Levy on the ground that he promised to keep the insurance in Torce by paying the premium out of his own funds.
After hearing the evidence, the trial court dismissed the complaint as to the company and directed a verdict in favor of Levy, and the Appellate Division affirmed the resulting judgment.
Viewing the evidence, as we must, in the light most favorable to the plaintiff, it appears that in November, 1952, the agent Levy who, over a 13-year period, had sold the deceased several *94 small life insurance policies, wrote the application for the policy in issue and collected the first quarterly premium of $39.75. The application was approved and a policy for approximately $7,650, plus $3,000 if death resulted from accidental means, was issued and delivered. The second quarterly premium fell due on February 26, 1953, and the formal notice, notifying the insured of such fact, contained this further provision :
‘ ‘ DO NOT PERMIT YOUR POLICY TO LAPSE
“ Effect of Failure to Pay Premium — Unless the premium covered by this notice shall be paid * * * on or before the date when due (or within the 31-day grace period), the policy * * * will become forfeited and void ”.[1]
Although the plaintiff paid Levy the premiums due on her husband’s smaller and earlier policies, she advised him, on February 24, 1953, that she did not have the money for the new policy. The plaintiff testified, however, that Levy assured her that he would ‘1 take care of ’ ’ paying the premiums and would look to her for reimbursement when she obtained the money from the summer rental of her home at Long Beach. Then, toward the end of March, just a few days before the expiration of the 30-day grace period provided for by statute (Insurance Law, § 155), the plaintiff received another notice reminding her that the premium had not been paid and that the grace period was about to run out. On the very day this was received, the plaintiff testified, she spoke to Levy and in response to her query, “ ‘ didn’t you tell me that you were taldng care of this thing for me and not to worry, not to think about it: you were covering me? ’ he assertedly replied, “ ‘ I told you I would take care of it, and I am taking care of it, and don’t worry.’ ” And, indeed, after the policy had, in fact, lapsed, the plaintiff declared that Levy, when collecting the other premiums, again assured her that he “ would take care of the big one.”[2]
Had the policy remained in force, the next quarterly premium would have fallen due on May 26, and, during the early part of *95 that month, Metropolitan’s home office inadvertently sent a notice of premium to the insured. This notice, upon which the plaintiff relies to establish a waiver, specifically recited, as do all of the company’s premium notices, that the premium should be paid only if “ said policy be then in force.” No premium was ever paid in response to this notice and on June 16, 1953, the insured, an electrician, died of a coronary thrombosis suffered while working in the normal course of his employment.
The plaintiff’s appeal from the judgment in Metropolitan’s favor may be quickly disposed of. Certainly, the due date of the premium was not extended, nor the lapsed policy reinstated, by virtue of any statements made by Levy that he would “ take care ” of the premium or policy. Quite apart from other considerations, it is enough to note that the policy explicitly provided that “No agent is authorized to alter or amend [it] * * # or to extend the due date of any premium.” (See, e.g., Drennan v. Sun Ind. Co., 271 N. Y. 182, 185-188; Abbott v. Prudential Ins. Co., 281 N. Y. 375, 378-381.) Equally unavailing is the claim that the sending of a premium notice constituted a waiver; the purely mechanical act falls far short of proof that the company waived, or intended to waive, the insured’s failure to pay the second premium. (See Ross v. New York Life Ins. Co., 68 F. 2d 727; Curtis v. Prudential Ins. Co. of America, 55 F. 2d 97.) And, we would simply observe that no evidence was offered at the trial that the other policies on the insured’s life could have been utilized for their loan or cash value to prevent the lapse of the policy in the suit. The complaint against the Metropolitan was, therefore, properly dismissed.
However, the evidence presented did require that the case against the defendant Levy be submitted to the jury. He had promised to pay the second quarterly premium in order to keep the policy in force. In short, if the jurors believed, as the plaintiff in effect testified, that Levy had told her not to worry about the February premium, that he would pay it and look to her for reimbursement in the future, they would have been justified in holding him liable. (See Siegel v. Spear & Co., 234 N. Y. 479; Joseph, Inc., v. Alberti, Carleton & Co., 225 App. Div. .115, affd. 251 N. Y. 580; Israelson v. Williams, 166 App. Div. 25, appeal dismissed 215 N. Y. 684; Landusky v. Beirne, 80 App. Div. 272, 274, affd. 178 N. Y. 551; Lawrence v. Francis, 223 Ark. 584, *96 588-590; Mansfield v. Federal Services Finance Corp., 99 N. H. 352, 354; Elam v. Smithdeal Realty & Ins. Co., 182 N. C. 599, 602-604; see, also, 16 Appleman, Insurance Law and Practice [1944], pp. 272-277, 294-295, 300-309;) In Landusky v. Beirne (80 App. Div. 272, affd. 178 N. Y. 551, supra), the defendant, an insurance agent, promised to obtain a ‘ ‘ good policy in a very good company ” upon the plaintiff’s house in Pennsylvania. However, the defendant procured a policy from a company which had no authority to do business in Pennsylvania or New York. The property was destroyed by fire, but no insurance was ever paid. The defendant was held liable for the damage sustained, the Appellate Division writing that the plaintiff “made out a violation of the defendant’s contract when he showed that the policy procured was not enforcible in New York or Pennsylvania ” and that the company issuing it refused to pay (80 App. Div., at p. 274). And, in the Lawrence case (223 Ark. 584, supra), the court wrote that, when an insurance agent “ undertakes to procure a policy of insurance for another, the law imposes upon [him] the duty * * * to perform the obligation that he has assumed, and the agent may be held liable for any loss * * * suffered * * * attributable to the agent’s failure to provide such insurance” (p. 589).
Although the cases cited deal with an agent’s failure to obtain insurance after a promise to do so, the principle underlying the decisions applies with equal force to the situation now before us. An agent who fails to keep a policy in force after promising to do so is in no better position than one who neglects to procure a policy after agreeing to do so.
The amount of Levy’s liability will, of course, depend upon whether the insured did or did not die by “ accidental means ”. If he did not, then Levy — if the jury concluded that he made the promise to take care of the premium due — would be liable, at most, for the face or principal amount of the policy, $7,650. On the other hand, if the insured died as a result of an accident (within the meaning of the rider), then, Levy would be liable for the further sum of $3,000.
The record before us is devoid of any evidence that death resulted from other than natural causes. The insured’s fatal heart attack took place while he was engaged in the course of his employment as an electrician, and death was not the result *97 of any “ unusual or extraordinary happening (Cf. Burr v. Commercial Travelers Mut. Acc. Assn., 295 N. Y. 294, 301.) Since this issue was tried, the trial court would have been under the necessity, in any view of the case, of dismissing so much of the plaintiff’s cause of action as sought a recovery for death by accidental means. Accordingly, the issue upon the new trial will be limited to the question of Levy’s liability for the face or principal amount of the policy.
The judgment insofar as it dismisses the complaint against the defendant Metropolitan Life Insurance Company should be affirmed, with costs. The judgment, insofar as it affects the defendant Levy, should be reversed and a new trial granted as to his liability in connection with the basic policy in the amount of $7,650, with costs to abide the event.
Chief Judge Conway and Judges Desmond, Froessel and Burke concur with Judge Fuld; Judges Dye and Van Voorhis dissent insofar as the judgment appealed from is reversed and vote to affirm upon the ground that it was neither intended by the insurance agent nor understood by the beneficiary that the agent personally agreed to pay or to guarantee the payment of the premium or the policy.
Judgment accordingly.

. A warning similar to this one is contained in the policy itself.

. It should, perhaps, he noted that Levy fatly contradicted the plaintiff’s testimony.