420 P.2d 767

**T. J. GOOD, Jr., also known as Jeff Good, Plaintiff-Appellee**

**v.**

**Jay J. HARRIS, Defendant and Counter-Claimant-Appellant.**

No. 7912.

Supreme Court of New Mexico.

Nov. 28, 1966.

Hannett, Hannett & Cornish, H. Vern Payne, Albuquerque, for appellant.

Zinn & Donnell, George A. Graham, Jr., Santa Fe, for appellee.

## OPINION

WALDO SPIESS, Judge, Court of Appeals.

T. J. Good, Jr., (Appellee) recovered judgment against Jay J. Harris (Appellant) upon a promissory note executed by Harris. The trial court likewise dismissed a counterclaim interposed by Harris against Good. Harris has appealed from the judgment rendered against him on the promissory note and the dismissal of his counterclaim. The parties will be referred to by name.

We consider it advisable to state certain of the material facts before considering the questions submitted.

Good and one, W. P. Reeves, acquired a certain federal oil and gas lease covering lands in the state of Colorado. Thereafter a contract dated December 31, 1957, was entered into whereby Good and Reeves jointly agreed to transfer an undivided one-fourth

interest in the lease to each, Harris and one Thomas L. Nabors. Harris and Nabors executed separate promissory notes payable to Good and Reeves as consideration for the interests acquired by them under the contract.

The judgment from which Harris has appealed is based upon the promissory note executed by him, which note in accordance with its terms became due on or before five years from December 31, 1957. The contract included an obligation on the part of Good and Reeves to execute formal assignments to Harris and Nabors separately of their respective interests in the lease upon demand. No such demand was ever made upon either Good or Reeves by Harris or Nabors. The contract further required each of the owners to proportionately contribute rentals as they became due for the period February 1, 1960 to February 1, 1962. The latter date being the date of expiration of the primary term of the lease.

The contract made no mention as to which of the parties would assume the responsibility of collecting the rental contribution from the others or of making payment of the annual rental to the proper person or agency.

Good assumed the responsibility of receiving and paying rentals, and for the years 1960, 1961 and 1962 Harris paid his proportionate part of the annual rent to Good, who, in turn, made the full annual rental payment.

Upon expiration of the primary term of the lease it was renewed for five years commencing February 1, 1962. Good and Reeves continued to be the only named lessees. The lease was cancelled for non-payment of rent which was due February 1, 1963. The facts relating to the cancellation are hereafter stated.

Good claiming sole ownership of the promissory note commenced this action against Harris. In defense Harris asserted: that the time of payment of the promissory note had been extended by oral agreement and it was not in fact due at the time the suit was filed; that in accordance with an oral agreement the principal of the note was to be paid from the proceeds of the sale of the lease; that the consideration for the note failed as a result of the cancellation of the lease, and that the action should be dismissed because of the absence of Reeves, an indispensable party. By counter-claim, likewise interposed, Harris sought damage against Good for the loss of his interest in the lease occasioned by its cancellation through Good's neglect to pay the rent in accordance with his obligation so to do.

As we have stated, the trial court rendered judgment against Harris on the promissory note and dismissed the counter-claim against Good.

The Harris brief sets forth eleven points which are relied upon for reversal. The claimed errors are generally directed to findings of fact and conclusions of law

made by the court, and in the refusal of the court to make certain requested findings and conclusions. The points essential to a determination of the case will mainly be considered and treated in connection with the basic legal problems presented.

■ It is first urged in defense that at the time of the execution of the note, although contrary to its express provision, it was agreed between Harris, Good and Reeves that if the oil and gas lease was not sold during its primary term and an extension of the lease was secured that the time of payment of the note would be extended and the principal of the note paid from the proceeds received through a sale of the lease. While Harris so testified Good, on the other hand, testified that there was no such oral agreement relating to the payment of the note. The trial court resolved the conflict against Harris upon evidence which we consider substantial. Consequently, upon review we are bound by the finding of fact made by the trial court and we will not pass upon the weight of the evidence. Webb v. Richardson, 69 N.M. 15, 363 P.2d 626, (1961); Allsup v. Space, 69 N.M. 353, 367 P.2d 531 (1961); Sanchez v. Garcia, 72 N. M. 406, 384 P.2d 681 (1963).

■ Harris next contends that the consideration for the note failed when the lease was cancelled and as a result it became unenforceable. It is clear from the language of the contract that the note was given for an undivided one-fourth interest in the lease. This Harris received when the contract and note were signed. Although no formal assignment was made or demanded Harris, nevertheless, acquired and had a vested equitable interest in the leasehold estate to the extent specified in the contract. Following the execution of the contract in 1957 Harris continued to hold and enjoy his interest in the lease until forfeiture in 1963.

The following provision relating to the contemplated duration of the lease is contained in the contract.

"It is mutually agreed that said Lease may be kept in full force and effect until February 1, 1962, and that rentals therefor are paid up to February 1, 1960. The parties are to proportionately share in the payment of rental to become due February 1, 1960, and subsequent thereto and each to contribute his share in payment for the same."

Harris retained his interest in the lease for the time specified in the contract. There was, consequently, no failure of consideration for the reason that Harris received the exact consideration for which the note had been given. Konecko v. Konecko, 164 Cal.App.2d 249, 330 P.2d 393 (1958); Vorchetto v. Sappenfield, 223 Mo.App. 460, 14 S.W.2d 685 (1929); Wilson v. Dexter, 135 Ind.App. 247, 192 N.E.2d 469 (1963); Coast Nat. Bank v. Bloom, 113 N.J.L. 597, 174 A. 576, 95 A.L.R. 528 (1934). We do

not consider that the law as announced in Wood v. Bartolino, 48 N.M. 175, 146 P.2d 883, cited by appellant, has any application under the facts of this case.

■ Absence of an indispensable party to the action was raised in the court below and likewise here on appeal. The contention is that since the note upon which the suit was based was payable to D. P. Reeves and T. J. Good, that Reeves was an indispensable party to the action and judgment should not have been rendered in his absence.

Upon being questioned respecting Reeve's interest in the note Good testified that Reeves had verbally assigned the note to him. The trial court expressly found that such assignment had been made by Reeves and Good was the holder and in possession of the note.

■ A negotiable instrument may be assigned or transferred without a writing. See Yost v. McCarty, 123 Ind.App. 288, 108 N.E.2d 718; Butler v. Kopplin, 253. S.W.2d 514 (Mo.App.1952); Brown v. Patella, 24 Cal.App.2d 362, 75 P.2d 119 (1938); Anno. 87 A.L.R. 1178.

■ Since Reeves had assigned his interest in the note to Good he was neither a necessary or indispensable party to the action. Harris likewise objects to the nonjoinder of Nabor or his estate. Clearly, Nabor had no interest in the note upon which the suit was based and was neither a necessary nor a proper party to the action.

After considering the arguments advanced by Harris we are satisfied that the judgment was properly rendered upon the note. There remains only to consider whether the trial court erred in dismissing the counterclaim.

As has been stated Good assumed the responsibility of paying the rent required by the lease for the years 1960, 1961 and 1962, and for each of the years received from Harris his proportionate part of the required payment.

The testimony of both Good and Harris conclusively shows that prior to February 1, 1963, the rental payment date, and during the first weeks in January, Good made demand upon Harris for his proportionate part of the total payment which Harris paid to Good, he, Good, then agreeing that he would pay the full annual rental before its due date.

Good requested Harris to notify him a few days before payment date so that the lease would not be jeopardized. On two occasions prior to February 1st Harris did notify and remind Good of the payment date. Good, however, failed to make the payment when it became due and as a result the lease was cancelled.

The following testimony given by Good in a deposition was introduced:

"* * * Well, to go on with the story, Mr. Reeves, on his recommendation and supposedly on Mr. Harris' recommenda-

tion and Mr. Nabor's recommendation, we had lost money on this drilling deal before this, and we were trying to recoup our losses, so we bought this lease for $10,000.00 and then Mr. Reeves and Mr. Nabers were unable to pay their share of the rentals. I had paid the rentals over a period of four years, I believe, and I had paid my share, Mr. Reeves' share and Mr. Nabers' share of these rentals, which was three-quarters. *Mr. Harris had been very consistent in paying his share, but then I probably goofed.* (Emphasis added.) I was late in paying the fifth year's rental. Mr. Harris had sent me his personal check, his share, for his one-quarter share of the rental, which did not include interest on the note, but he did send me his share of the rental and I mailed it in. I got a cashier's check from the bank in Fort Sumner and mailed it in, and it was rejected because it was received too late in the land office in Denver. I believe it was Denver. This amount was $1,500.00, I believe, sir, approximately. It was fifty cents an acre on 2,400 acres, whatever that is, fifteen hundred and some odd dollars. Anyway, I did send the check in and it was rejected because of being too late."

Good also testified at the trial, in part, as follows:

"Q. You sent by that letter a billing for the lease for his renewal on February 1, 1963, or payment of rentals the amount of rentals that was due to keep the lease in force for another year, isn't that correct?

"A. Did I send—

"Q. Well, you notified him that the rentals was due again?

"A. Yes, sir.

"Q. And you asked him to notify you to be sure that you paid the rentals, isn't that correct?

"A. Yes, sir.

"Q. Mr. Harris sent you his check, didn't he?

"A. Yes, sir.

"Q. And notified you some eight, nine or ten days at your home in Fort Sumner that the rental had to be paid by January 1st, 1963, didn't he?

"A. Yes, sir.

"Q. Mr. Harris called you some four or five days or six days prior to the date that it was due in Santa Fe where you were in attendance at the legislature and told you that he had sent his check to you here in Fort Sumner and that the rentals had to be paid by January 1st to keep the lease in effect, didn't he?

"A. Yes, sir.

**184**

"Q. You goofed as you put it, didn't you?

"A. As I said the legislature was in session, I was a member of the legislature, I had to be there, but I did come home on the 31st—

"Q. —(interrupting) excuse me just a minute I don't mean to interrupt you, but you didn't pay the rentals?

"A. I attempted to pay it.

"Q. But you didn't pay it in time?

"A. That was the reason for not accepting the rental payment.

"Q. But you had been notified by Mr. Harris well in advance that you could pay the rental and he told you when it could be—when it would be due?

"A. Correct."

The contract between the parties did not require Good to receive rental payments from the other parties, nor did it obligate him to pay the full rent as it became due. However, by a course of dealing for some three years prior to February 1, 1963, and by demanding and accepting from Harris his proportionate part of the annual rental Good actually assumed the responsibility of paying the rent on or before its due date, and when he assumed so to do and thereby induced and permitted Harris to place reliance upon his performance he became obligated to exercise reasonable care and diligence. I Williston, Contracts, (3rd Ed.) 597, § 138; Maddock v. Riggs, 106 Kan. 808, 190 P. 12, 12 A.L.R. 216, (1920) Carr v. Maine Central R. R. (1917), 78 N.H. 502, 102 A. 532; Boyd v. Harrison State Bank, (1936), 102 Mont. 94, 56 P.2d 724; Prosser on Torts (3rd Ed.) 340, § 54. Compare Elam v. Smithdeal Realty and Insurance Company, 182 N.C. 599, 109 S.E. 632, 18 A.L.R. 1210 (1921); Brown v. Cooley, 56 N.M. 630, 635–636, 247 P.2d 868 (1952); Jernigan v. New Amsterdam Casualty Co., 74 N.M. 37, 41, 390 P.2d 278 (1964); Spiegel v. Metropolitan Life Ins. Co., 6 N.Y.2d 91, 188 N.Y.S.2d 486, 160 N.E.2d 40; Republic Thrift Syndicate v. Atkinson, (Tex. Civ.App.1929) 21 S.W.2d 1102.

Good forgot to make this payment in time and as he put it "goofed". He consequently failed to exercise any care whatsoever which resulted in the loss to Harris of his interest in the lease. Under these facts, in our opinion, Harris was entitled to recover on his counterclaim against Good.

For the stated reasons the judgment against Harris upon the promissory note is affirmed but subject to a re-determination of the indebtedness. The judgment dismissing the counterclaim is reversed and the cause remanded to the district court with instructions to reinstate the cause and ascertain the value of the leasehold estate as of February 1, 1963, and award

judgment in favor of Harris for one-fourth of such value and to make such further adjustment of indebtedness between the parties as shall be proper.

It is so ordered.

CHAVEZ, MOISE, and COMPTON, JJ., and LaFEL E. OMAN, J., Court of Appeals, concur.