**BETHLEHEM FABRICATORS, INC.,**
**Plaintiff-Appellee,**

v.

**BRITISH OVERSEAS AIRWAYS COR-**
**PORATION, Defendant-Appellant.**

**No. 25, Docket 34013.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 17, 1970.

Decided Nov. 25, 1970.

Peter P. Smith, III, New York City, Shea, Gallop, Climenko & Gould, New York City, for plaintiff-appellee.

William L. Schierberl, New York City (Cyril Hyde Condon, Thomas J. Whalen, Condon & Forsyth, New York City, on the brief), for defendant-appellant.

Before FRIENDLY, SMITH and HAYS, Circuit Judges.

HAYS, Circuit Judge:

In the district court, plaintiff Bethlehem Fabricators, Inc., recovered damages of $78,115.98 plus interest from defendant British Overseas Airways Corporation in an action based upon breach of contract and tortious misrepresentation arising from an oral promise to require a performance and payment bond. The action was originally brought in the New York courts, and was removed to the United States District Court for the Eastern District of New York on the ground of diversity of citizenship. Defendant appeals from the judgment entered upon the jury's verdict. We affirm.

## FACTS

The events leading to the present suit began in 1962 when BOAC decided to construct a new cargo building at New York International Airport (JFK), a fa-

cility of the Port of New York Authority. By early 1963, BOAC had contracted with the architectural firm of Raymond & Rado (architect) to design and supervise the construction of the building. Once BOAC had approved the drawings and specifications, the architect compiled the bid documents, dated December 16, 1963, describing the work to be performed and sent them accompanied by an invitation to submit bid proposals, to a number of general contractors. The intention of BOAC was to award all the work to one general contractor who would in turn make arrangements with his own subcontractors.

The bid proposal form did not request simply an aggregate price but rather separate bids for certain work. A separate price was specifically requested for the cost of a performance and payment bond, if one was required by the architect. This provision (Item 6, proposal form) stated:

> "6. BONDS.
>
> If required by the Architect the Undersigned will supply a satisfactory Performance Bond and Labor and Material Payment Bond in the form currently issued by the American Institute of Architects, in the amount equal to fifty percent (50%) of the Contract Sum. The cost of supplying these bonds is not included in the Contract Sum and if so ordered to supply these bonds the cost will be ..... Dollars ($.....)."

After consideration of the bids submitted, BOAC awarded the contract to construct the building to Thatcher Construction Company, and a contract between BOAC and Thatcher was executed on April 20, 1964 on the American Institute of Architects' Standard Form of Agreement between Owner and Contractor (referred to hereafter as the general contract). The completed proposal form, including Item 6 quoted above, with a bid of $4,250 for a "satisfactory Performance Bond and Labor and Material Bond," was made part of the general contract.

On the basis of the bid documents which Thatcher had circulated to its prospective subcontractors (including Item 6 of the bid proposal), Bethlehem submitted its bid and was notified by Thatcher that it had been awarded the structural steel subcontract. Bethlehem had had subcontracts with Thatcher on at least two other projects, both of which were covered by payment bonds. On one of these projects, Bethlehem had had to be paid by Thatcher's bonding company.

Bethlehem sent Albert Moser, its Assistant Manager of Credits and Contracts, to New York to meet with Thatcher to discuss various aspects of the project, including the payment bond. Moser was referred by Thatcher to the architect. On May 8, 1964 Moser telephoned the architect's office where he spoke to a Mr. Bonnington, who was in charge of the BOAC contract for the architectural firm.

The jury apparently accepted the crucial testimony of Moser that Bonnington first told Moser that Thatcher would have to provide a payment bond "if so required." When Moser responded that Bethlehem would not accept the contract unless there was a payment bond, Bonnington informed him that BOAC had made the decision to require Thatcher to obtain a payment bond and that Bethlehem "did not have anything to worry about" and should therefore "accept the job." Moser reported the substance of this conversation in a memorandum to his superior at Bethlehem. On the basis of this assurance, Bethlehem accepted the contract and immediately began work on the structural steel for the cargo building.

Thereafter, without informing Bethlehem of the change, BOAC in order to save itself the cost of the premium, decided not to require a payment bond of Thatcher.

Thatcher failed to make timely payments to its subcontractors and on November 12, 1964 Bethlehem filed a claim which precipitated the filing of a petition in bankruptcy by Thatcher the next

day. Of the total subcontract price of $131,400.31 Bethlehem received $50,000 from Thatcher and additional distributions in the bankruptcy amounting to $3,284.33, leaving a total due under the contract of $78,115.98.

▮ At the end of the trial, the court submitted to the jury a form of general verdict with written interrogatories, pursuant to Fed.R.Civ.P. 49(b). The jury returned a verdict for the plaintiff.[1] The defendant then moved for reconsideration by the jury on the ground that the jury's answers to the interrogatories were inconsistent (note answer to question #4), but the court denied the motion.[2]

## I.

It is agreed that New York law applies.

Although the court below and the parties spend much time discussing innocent and negligent misrepresentation, fraud, deceit, and other theories of recovery, the search for a sufficient legal theory to impose liability upon BOAC need go no further than simple contract. BOAC, through its agent, the architect, promised as part of the consideration for Bethlehem's undertaking to perform the work covered by the subcontract to require a payment bond. Upon Bethlehem's performance BOAC became bound by its promise and must now respond in damages for breach of that promise.

▮ The record contains ample evidence to support the jury's finding that the architect had the authority to promise that there would be a payment bond. Item 6, quoted above, was included in the documents furnished to Bethlehem. It gave the architect the power to decide whether there was to be a payment bond. This power included the authority to bind BOAC to subcontractors by promises and representations as to the bond.

As the district court held, the authority of the architect to decide whether a bond would be required also includes, as a matter of law, the authority to inform subcontractors of its decision. The district court correctly rejected the jury's aberrant finding to the contrary.

▮ Article 36 of the American Institute of Architects' General Condition of the Contract for the Construction of Buildings, incorporated into the general contract between BOAC and Thatcher, upon which the defendant puts much reliance, provides that "Nothing contained in the Contract Documents shall create any contractual relation between any subcontractor and the Owner." This argument misses the point, for it is not the "Contract Documents" upon which liability is based but rather upon a sub-

[1]. The verdict was returned in the following form:

*Questions to be answered by the Jury:*
1. Did BOAC's architect tell plaintiff that there would be a Material Payment Board?
    Yes X No
2. Did plaintiff reasonably rely on this statement in undertaking its work?
    Yes X No
3. Did BOAC authorize the architect to promise that there would be a Material Payment Bond?
    Yes X No
4. Did BOAC authorize the architect to inform subcontractors of the decision to require a Material Payment Bond?
    Yes No X
5. Did BOAC change the conditions on which plaintiff submitted its bid, without notice to plaintiff, and to plaintiff's detriment?
    Yes X No
The jury finds:
(a) for the plaintiff in the sum of $78,115.21
    Yes X No
(b) for the defendant.
    Yes No

[2]. In its opinion, the district court held that, as a matter of law, the architect was authorized by the language in the Proposal Form, Item 6, to tell the subcontractors of the decision as to acquiring a surety bond and that the jury's answers were not so inconsistent as to require setting aside the general verdict. We agree. See Studley, Inc. v. Gulf Oil Corp., 407 F.2d 521, 526–527 (2d Cir. 1969).

sequent and wholly independent contract between the architect as agent for BOAC, and Bethlehem.

## II.

■ Liability on the facts of this case is also supported by the principles of Section 90 of the Restatement (Second) of Contracts (Tent. Draft No. 2, 1965). The elements of a promise which should reasonably induce action, justifiable reliance and damages are present. Although the defendant claims that gratuitous promises inducing detrimental reliance have not been enforced in New York except in charitable subscription cases, this is not strictly true in the light of the New York cases imposing liability on those who promise that there will be insurance and fail to fulfill that promise, Siegel v. Spear & Co., 234 N.Y. 479, 138 N.E. 414 (1923); cf. International Products Co. v. Erie R. Co., 244 N.Y. 331, 155 N.E. 662 (1927); Bush Terminal Co. v. Globe & Rutgers Fire Ins. Co., 182 App.Div. 748, 169 N.Y.S. 734 (1st Dept. 1918), aff'd 228 N.Y. 575, 127 N.E. 909 (1920), or who let insurance lapse, Spiegel v. Metropolitan Life Ins. Co., 6 N.Y.2d 91, 188 N.Y.S.2d 486, 160 N.E.2d 40 (1959). Since the consequences for Bethlehem of its reliance on BOAC's promise to require a payment bond were potentially as severe as were the consequences in the insurance cases, there is no persuasive reason for distinguishing those cases.

## III.

■ The defendant's contention that the plaintiff's claim is barred by the three-year statute of limitations for negligence can be disposed of on two grounds. First, the "relation back" provision of Rule 15(c) of the Fed.R.Civ.P. applied here to relate any amendment back to the date when the original complaint was filed. The original complaint asserted that BOAC was obligated to cause all subcontractors to be paid, that plaintiff performed work, and that plaintiff had not been paid. This was sufficient to put defendant on notice of the general transactions on which Bethlehem has relied. Second, since we find that recovery is based upon a contract between the parties, the period of limitation is six years rather than three. New York CPLR § 213(2).

The judgment is affirmed.