**Constance GARCIA and Frank Garcia, Plaintiffs-Appellants,**

v.

**Helen F. VON MICSKY, As Administratrix of the Estate of Lajos Von Micsky, Deceased, Defendant-Appellee.**

**No. 639, Docket 78–7438.**

United States Court of Appeals, Second Circuit.

Argued Feb. 20, 1979.

Decided July 17, 1979.

Albert A. Juron, New York City (Juron & Minzer, P.C., New York City, of counsel), for plaintiffs-appellants.

Arthur N. Seiff, New York City (Anthony L. Schiavetti, New York City, of counsel), for defendant-appellee.

Before LUMBARD, OAKES and VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

This is an appeal from a judgment dismissing appellants' complaint in a medical malpractice action following a jury trial before Pierce, J., in the Southern District of New York. The sole issue presented for review is whether the district judge erred in dismissing appellants' separate cause of action for breach of warranty without submitting it to the jury.

In December 1973, appellant Constance Garcia, who had had several miscarriages and whose second daughter had been delivered prematurely by caesarian section, became pregnant again. In January 1974, she entered St. Luke's Hospital in New York City for an abortion and sterilization by way of tubal ligation. The surgery was performed by Dr. Von Micsky, who died before this action was commenced.

Prior to the operation, Mrs. Garcia signed a written authorization for the proposed surgery which read in part as follows:

I understand that the proposed procedure is usually virtually permanent in its effect and usually irreversible, although it is possible that I may not be completely or permanently sterile after the operation. I have been informed of other methods of birth control.

The jury, in response to a specific interrogatory submitted by the trial judge, found that Mrs. Garcia had been informed that there was a possibility she might not be completely or permanently sterile following the operation. Moreover, appellants' medical expert testified that obstetricians and gynecologists generally recognize the possibility that a tubal ligation may not be 100% effective in preventing future pregnancies.[1] Nonetheless, Mr. and Mrs. Garcia insist that they are entitled to damages

from Dr. Von Micsky's estate because Mrs. Garcia did become pregnant in 1975 and underwent another abortion.

Their claim in this Court is not based upon negligence or malpractice. That claim was rejected in the district court, and appellants do not contend that this was error. Appellants' only contention is that the trial court erred in dismissing their cause of action for breach of warranty without submitting it to the jury. The warranty was allegedly made orally by Dr. Von Micsky to Mrs. Garcia some five months after the surgery had been performed. Mrs. Garcia could not testify concerning Dr. Von Micsky's statements because the New York legislature, in its wisdom, has decided that a plaintiff may not testify about communications with a deceased defendant who cannot speak in his own defense. *See* C.P.L.R. § 4519. However, by a stroke of good fortune, Mrs. Garcia's sister-in-law happened to overhear what Dr. Von Micsky said and testified in her behalf.

The sister-in-law stated that she accompanied Mrs. Garcia to St. Luke's Hospital in June 1974 and remained in a waiting room, which served several doctors, while Mrs. Garcia visited Dr. Von Micsky in his office. After the visit, Dr. Von Micsky entered the waiting room with Mrs. Garcia and, in the sister-in-law's hearing, told Mrs. Garcia "that she had nothing to worry about, that it was impossible for her, you know, to have any more children and to try to relax and to take it easy."

The district judge, pointing out that the doctor's statement was made long after he had completed his surgery and that it was not part of another contractual arrangement, held as a matter of law that it was not a warranty. This is the generally accepted rule and is the law of New York. *Clegg v. Chase*, 89 Misc.2d 510, 511, 391 N.Y.S.2d 966 (1977); *Sard v. Hardy*, 34 Md. App. 217, 239, 367 A.2d 525, 537 (1976), *aff'd on this point and reversed on other grounds*, 281 Md. 432, 451, 379 A.2d 1014, 1026 (1977);

---

1. Appellants' expert testified that 99 per cent of the operations are successful. This appears to

be a generally accepted figure. *See Herring v. Knab*, 458 F.Supp. 359, 362 (S.D.Ohio 1978).

*Herrera v. Roessing*, 533 P.2d 60, 61–62 (Colo.App.1975); *Wilson v. Blair*, 65 Mont. 155, 167, 211 P. 289, 293–94 (1922).

To hold as appellants urge in this case would be to elevate the deceased doctor's therapeutic reassurance of his patient to the status of a guaranty, made without contract or compensation and at the risk of absolute liability. This does not make good sense, either medically or legally. *See Sard v. Hardy, supra*, 281 Md. at 452–53, 379 A.2d at 1027; *Herrera v. Roessing, supra*, 533 P.2d at 61; *Rogala v. Silva*, 16 Ill. App.3d 63, 66–67, 305 N.E.2d 571, 574 (1973). The judgment appealed from is affirmed.

OAKES, Circuit Judge (dissenting):

There was no negligence. The jury found there was no uninformed consent. There was no warranty prior to the performance of the surgery.

However, appellants pleaded and there was evidence—evidently admissible under the New York dead man's statute [1]—to the effect that five months after the operation the surgeon guaranteed its success without making the tests that he could have made to verify whether the tubal ligation had been successful. There was also evidence that Mrs. Garcia relied on the guarantee and did so to her detriment, having an unwanted pregnancy necessitating, in view of her condition, an abortion. The question is then whether New York law which to some extent follows the Restatement (Second) of Contracts § 90 position [2] on promissory estoppel's serving as a substitute for consideration, *see Bethlehem Fabricators, Inc. v. BOAC*, 434 F.2d 840, 844 (2d Cir. 1970); *Spiegel v. Metropolitan Life Insurance Co.*, 6 N.Y.2d 91, 188 N.Y.S.2d 486, 160 N.E.2d 40 (1959), would apply directly or by analogy in this situation and accordingly whether the trial court should have dismissed the count based on this post-surgical assurance of success.

To elaborate, appellant's complaint alleged that the doctor "expressly and impliedly represented to the plaintiff Constance Garcia that his diagnoses, surgical procedures and subsequent treatment and tests would *and did* result in her sterility" (emphasis added). The testimony of Mrs. Gutierrez, Mrs. Garcia's sister-in-law, was also to the effect that the doctor told Mrs. Garcia that the operation *had made* her sterile, that is, "that she had nothing to worry about, that it was impossible for her . . . to have any more children . . . ." [3] Appellants' counsel argued in opposition to appellee's motion to dismiss that the statement was a separate promise made post-operatively as to the state of Mrs. Garcia's condition at that time. He suggested that the promise was tantamount to a wrong diagnosis that could be characterized as giving rise to an "estoppel, breach of warranty or whatever." Both the complaint and the evidence therefore clearly set forth a theory of recovery based upon the separate statement made at the checkup visit five months after the operation.

1. N.Y.Civ.Prac.Law § 4519 (McKinney).

2. § 90. Promise Reasonably Inducing Action or Forbearance

(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

(2) A charitable subscription or a marriage settlement is binding under Subsection (1) without proof that the promise induced action or forbearance.

Restatement (Second) of Contracts § 90 (Tent. Drafts Nos. 1–7).

3. It is neither the duty nor the province of an appellate court to dismiss such evidence as implausible or improbable.

Of course it can be argued that the doctor's statement was not a "promise" inasmuch as it did not manifest any intention on the part of the *doctor* to act or refrain from acting. Restatement, *supra* § 2(1). But it was an assurance of a condition or fact upon which the doctor could fully have expected his *patient* to act. He was the expert, and he was presumably being paid for his post-surgical advice (though I do not necessarily suggest this payment is "consideration"). To me the doctor's assurance could be considered to amount to a warranty. *Id.* § 2, comment d.

What the district court said in dismissing the cause of action was that it "[did] not find that there is sufficient evidence to warrant any determination by the jury that an agreement came into existence that was in the nature of a guarantee of sterility." *But see United States v. Consolidated Edison Co. of New York*, 452 F.Supp. 638, 653 (S.D.N.Y.1977), *aff'd on other grounds*, 580 F.2d 1122 (2d Cir. 1978).

Could liability arise from this reassurance under New York law because of Mrs. Garcia's reliance? If so, the jury should have been allowed to determine whether Dr. Von Micsky made the statement as Mrs. Gutierrez alleged expecting Mrs. Garcia to rely upon it and without sufficient basis therefor; whether Mrs. Garcia in fact relied upon the representation by resuming sexual relations with her husband because of the representation that she was sterile; and whether her reliance, if any, was reasonable in view of the complete absence of any further treatment or tests following the operation itself, as of which time Mrs. Garcia must, by virtue of the jury verdict on the informed consent cause of action, be held to have known that the success of the operation could not be guaranteed in advance.

*Clegg v. Chase*, 89 Misc.2d 510, 511, 391 N.Y.S.2d 966, 967 (Sup.Ct.1977), which dismissed a warranty action in a tubal ligation case because "the complaint [did] not allege the existence of a special contract, accompanied by consideration separate and distinct from the fee for the sterilization operation," is readily distinguishable because it involved no subsequent representation. The theory of recovery in this case can be construed as a suit upon a separate promise or warranty which, although not accompanied by separate consideration, could logically be binding under principles of promissory estoppel well settled in New York.[4]

To be sure there are expressions in some lower court cases in New York that tend to take a limited view of the doctrine of promissory estoppel. *See, e.g., Healy v. Brotman*, 96 Misc.2d 386, 409 N.Y.S.2d 72, 75 (1978) (doctor may not recover from lawyer for services to lawyer's client despite lawyer's assurances, and doctrine said to be applied "primarily" to charitable subsections and promises to insure by gratuitous bailees or agents). But there was evidence that Mrs. Garcia definitely did rely on the surgeon's assurances and did become pregnant and had an abortion. This is true even though guarantees generally require reliance of a "substantial character," Restatement (Second) of Contracts § 90, comment b. If the assurances were made it would be just to enforce them, for there was evidence that the surgeon did not make tests he could have made to ascertain whether the tubal ligation had been successfully performed. Thus, I see no logical reason that the New York Court of Appeals would not apply this "flexible" doctrine, *id.*, in this case. But the same factors which bear on whether any relief should be granted also bear on the character and extent of the remedy. *Id.*, comment d and illustration 8; *Goodman v. Dicker*, 83 U.S.App.D.C. 353, 169 F.2d 684 (1948); *see* Fuller & Perdue, *The Reliance Interest in Contract Damages*, 46 Yale L.J. 52, 75–80, 401–06 (1936–37).

As set forth in the Restatement (Second) of Contracts § 90(1), note 2 *supra*, "The remedy granted for breach may be limited as justice requires." The damages that appellants claimed were $100,000 for Mrs. Garcia's expense of the subsequent therapeutic abortion and for mental and physical pain and suffering, including fear of pregnancy, in connection therewith, and $25,000 for Mr. Garcia's claim for loss of consortium.

Because I agree that there is a danger that a deceased doctor's therapeutic reassurance of his patient could in some cases, at least where the doctor is deceased, lead to virtually unlimited absolute liability, I suggest—having no authority therefor—that the New York courts would, they cer-

**4.** *Spiegel v. Metropolitan Life Insurance Co.*, 6 N.Y.2d 91, 188 N.Y.S.2d 486, 160 N.E.2d 40 (1959); *cf. Hamer v. Sidway*, 124 N.Y. 538, 27 N.E. 259 (1891); *Spector v. National Cellulose Corp.*, 181 Misc. 465, 48 N.Y.S.2d 234 (1943).

tainly could quite properly, in this situation limit liability to actual out-of-pocket expense incurred as a result of the wife's reliance, here the costs of the therapeutic abortion and follow-up treatment if any.

I would thus reverse the judgment and remand the cause for a new trial on the section 90 theory of liability, under this limited approach.