*390 OPINION OF THE COURT
Martin M. Solomon, J.
The pro se plaintiffs commenced, this action against Chase Manhattan Bank (hereinafter referred to as Chase) by endorsed complaint. The action is for breach of contract for failure to provide LifePlus Credit Insurance for Chase Cardmembers coverage to plaintiffs. The complaint alleges: “Failure to provide insurance coverage for fees rendered. Breach of contract. Failure to foward [sic] appropriate fees to Chase Life Plus.”
The action seeks money damages in the sum of $7,700, which appears to be the approximate balance due on the credit card accounts at issue at the time the action was commenced. There does not appear to have been any activity on these accounts since the commencement of the action other then the continued accrual of interest.
In defense of the action, defendant asserts that “No contract existed between Chase and the plaintiffs to provide any fees, money, remuneration or reimbursement with regard to the indebtedness incurred by plaintiffs through the use of Visa and Master Cards issued by Chase.” In addition, the answer alleges that the pro se endorsed complaint fails to state a cause of action against Chase.
Defendant counterclaimed against the plaintiffs for the balance due on the credit card accounts. As of the date of the answer, there was $5,352.56 due on the Visa account at issue and $2,711.31 due on the Mastercard account at issue. The plaintiffs do not dispute that these balances are due and owing on these accounts.
The action was tried to the court on April 8, 1996. The plaintiffs testified on their own behalf, Robert Riley, employed by defendant as a credit analyst, testified for the defendant. Mr. Riley’s duties include investigating disputes and delinquent notices and he testified that he was familiar with the LifePlus Credit Insurance for Chase Cardmembers plan.
Plaintiff Cindy Card obtained the Visa and Mastercard from the defendant in 1989 and 1990. It is undisputed that Ms. Card was the primary cardholder throughout the existence of these accounts, Kermit Card was the cosigner on these accounts. At the time of the opening of the accounts, Ms. Card was solicited by the defendant to purchase LifePlus Credit Insurance for Chase Cardmembers for these accounts. Ms. Card accepted the credit insurance coverage at the time she opened these accounts.
*391 Defendant posted a charge each month against each credit card for the credit insurance coverage. Defendant collected the payment each month for the credit insurance on each card. These charges and payments continued from 1989 until activity on the cards ceased in or about 1994.
Ms. Card was employed from 1989 through August of 1993. In August of 1993 Ms. Card became unemployed. In August of 1993 the LifePlus Credit Insurance for Chase Cardmembers plan was in full force and effect on both accounts.
The plaintiffs never received any insurance policy or certificate of insurance for LifePlus Credit Insurance for Chase Card-members in connection with the credit card insurance. After Ms. Card became unemployed she attempted to have the Life-Plus Credit Insurance for Chase Cardmembers coverage pay her monthly credit charges pursuant to the advertisement and solicitation she received.
Plaintiffs made repeated requests for insurance information from the defendant. Plaintiffs twice requested relevant documents from defendant by letter, the first nearly one year prior to trial. Defendant never responded to these requests. In fact, defendant’s extensive business records fail to show that plaintiffs ever received a copy of the LifePlus Credit Insurance for Chase Cardmembers insurance policy or a certificate of insurance. Moreover, defendant’s records fail to show that any of the premiums collected by defendant were forwarded to any insurance company.
Defendant did not or could not produce any insurance policy or certificate of insurance for either itself or the plaintiffs in connection with these accounts. Defendant’s denial of coverage was never communicated in writing to plaintiffs.
Plaintiffs put in evidence an advertisement and solicitation for the LifePlus Credit Insurance for Chase Cardmembers that they had received from the defendant. The LifePlus Credit Insurance for Chase Cardmembers advertisement and solicitation is printed on the return payment envelope included with the monthly statements for each credit card. This document was received by plaintiffs from the defendant. The application for insurance is printed on each accounts billing statement and, upon completion is returned to the defendant. The Chase name and logo appear prominently in at least three locations on the advertisement and solicitation.
Mr. Riley testified that unemployment coverage was not offered in 1989 when the plaintiffs first purchased the policy. De *392 fendant did not produce any advertisement, solicitation, application, insurance policy or certificate of insurance from 1989, or any other date, showing this to be the case. Mr. Riley also testified that the unemployment coverage was not offered until January 1, 1993 and then only to new applicants. The sole evidence offered in support of this claim is Mr. Riley’s testimony. It is worthwhile to note that Mr. Riley testified that the cost of the insurance package with unemployment coverage and the cost of the package without unemployment coverage was the same.
Mr. Riley testified that Chase does not send out any annual bills or statements in connection with the LifePlus Credit Insurance for Chase Cardmembers, summary of cardmembers insurance coverage, or coverage options offered or available. In fact, it appears that the only communication concerning this insurance Chase had with the plaintiffs was the advertisements, solicitations and applications for insurance included with the regular monthly billing, and the monthly charges on the credit card accounts assessed for the insurance products.
The printed statements contained in defendant’s advertisement and solicitation submitted by plaintiffs contradict Mr. Riley’s testimony. The advertisement and solicitation for enrollment in the LifePlus Credit Insurance for Chase Cardmembers plan, which includes unemployment credit insurance, states, “If you have previously checked this box, there is no need to re-enroll. Your account is covered” (Emphasis added.)
It is worthwhile to note that the application for insurance is a part of the monthly billing statement and is returned to Chase with the monthly billing statement and payment. The advertisement and solicitation states: “[!.] Find the LifePlus Enrollment Box on this month’s billing statement when you pay your bill. [2.] Check the box to enroll in LifePlus Protection. [3.] Put your birth date on the statement in the boxes provided. Mail with your payment.” (Emphasis added.)
Mr. Riley testified that Chase would routinely refer card-members by form letter to contact the insurance company with any questions or problems. Despite the bank’s extensive records, he showed no record that this had been done in connection with plaintiffs’ claim for insurance information. The Life-Plus Credit Insurance for Chase Cardmembers solicitation states: “This credit benefit activates only when Chase is notified to do so by you.” (Emphasis added.)
This court’s analysis begins with the fact that plaintiffs dealt solely with the defendant throughout the transactions involv *393 ing these accounts. Clearly there was a contractual relationship between the parties involving the Visa and Mastercard accounts.
Whether Chase was formally and technically registered or licensed as an insurer or insurance agent under any State or Federal law is irrelevant. The record is far too incomplete to make this determination and it may well be that Chase is or should be registered as an insurer or insurance agent, or both, in order to legally sell the insurance product as authorized by Federal statute. (12 CFR 225.25 [b] [8], recodified at 12 CFR 225.28 [b] [11] [Regulation Y].)
“Listed in this section of the regulation are seven specific exemptions from the general statutory regulation prohibition that a bank holding company (BHC) may not act as principal, agent or broker in the sale of insurance because such activities are not closely related to banking. Only one of these exemptions authorizes the underwriting of insurance; the remainder deal essentially with agency or brokerage functions.
“Exemption (i) permits a company to act as agent, broker, or principal/underwriter for credit-related life, accident, health or unemployment insurance; provided, however, that the extensions of credit are by the BHC or its affiliates and the amount insured is at no time greater than the outstanding balance due.” (New York Insurance Law § 20.03 [2] [c] [iii] [Bender’s NY Prac Series 1995].)
Defendant’s failure to obtain appropriate licenses or properly register as a broker/agent or insurer does not preclude this court from granting the plaintiffs the appropriate relief. The evidence shows that Chase was acting as an agent in connection with the LifePlus Credit Insurance for Chase Cardmembers.
The advertisement and solicitation for insurance was received from Chase by plaintiffs. The Chase name and logo are prominently displayed on the advertisement and solicitation. Chase assessed the charges for the insurance on these accounts and collected the payments from plaintiffs. Chase was the party to be notified to activate the coverage.
“It is no longer doubtful that under established law an agent or broker may be held liable for neglect in failing to procure insurance with liability limited to that which would have been borne by the insurer had the policy been in force. The liability may either be based upon breach of contract or tort (American Motorists Ins. Co. v Salvatore, 102 AD2d 342, 346).” (Kinns v *394 Schulz, 131 AD2d 957, 959.) “When an insurance agent undertakes to obtain a policy of insurance for a client, the agent may be held liable for neglect if it fails to procure such a policy (see, Spiegel v Metropolitan Life Ins. Co., 6 NY2d 91). The fact that an agent acts for a disclosed .principal does not relieve the agent of liability for its own negligent acts (see, Jones v Archibald, 45 AD2d 532).” (Tucci v Hartford Cas. Ins. Co., 167 AD2d 387, 388.) “[I]t is well settled that an agent can be held liable for his own negligent acts [citations omitted].” (Reliance Ins. Co. v Morris Assocs., 200 AD2d 728, 730.)
Chase failed to show that the monthly premiums assessed by Chase and paid to Chase by the plaintiffs were actually forwarded to any insurer. There was simply no evidence that Chase fulfilled any of its duties to obtain LifePlus Credit Insurance for Chase Cardmembers for plaintiffs.
It is reasonable to infer that Chase was heavily involved in the preparation of the advertisement and solicitation for insurance. The application for insurance was actually a part of the monthly account statements prepared by Chase. Whether or not Chase was actively involved in the preparation of the advertisement and solicitation and the application for insurance, Chase is responsible to its consumer customers and may not recklessly allow them to be deceived or misled as to the participation of Chase in the transactions involving this insurance.
The content of advertisements promoting life insurance products is strictly regulated by New York State insurance regulations. 11 NYCRR 219.4 provides:
“(a) (1) Advertisements shall be truthful and not misleading in fact or in implication. The format and content of an advertisement of a life insurance policy or annuity contract shall be sufficiently complete and clear so that it is neither misleading nor deceptive, nor has the capacity or tendency to mislead or deceive. Statements should not cloud or misdirect the consideration of the purchaser. The use of statistics, illustrations and statements which may be factually correct will not be acceptable if their impact misleads or deceives. The use of technical insurance terminology should be held to a minimum and be appropriate within the context of the advertisement.
“(2) The information required to be disclosed by these rules shall not be minimized, rendered obscure, or presented in an ambiguous fashion or intermingled with the text of the advertisement so as to be confusing or misleading.
*395 “(3) Whether an advertisement had the tendency or capacity to mislead or deceive shall be determined by the superintendent from the overall impression that the advertisement may be reasonably expected to create upon a person not knowledgeable in insurance matters.”
This is the standard applied by the Superintendent of Insurance to life insurance advertisements. The court notes that credit life insurance is a major component of the package being offered in the advertisement offered in evidence.
In reviewing the deceptive acts and practices and the false advertising statutes (General Business Law §§ 349, 350, respectively) the Court of Appeals has stated, “In weighing a statement’s capacity, tendency or effect in deceiving or misleading customers, we do not look to the average customer but to the vast multitude which the statutes were enacted to safeguard—including the ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze but are governed by appearances and general impressions [citations omitted].” (Guggenheimer v Ginzburg, 43 NY2d 268, 273.) It appears that the Court of Appeals has retreated somewhat from this subjective standard and now applies a more objective standard which is whether the representations or omissions are likely to mislead a reasonable consumer acting reasonably under the circumstances. (Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d 20.)
Clearly, the average reasonable consumer acting reasonably is less than knowledgeable about credit insurance matters. Moreover, the average reasonable consumer would not be knowledgeable as to Chase’s relationship to the credit insurance transactions.
Chase must have been aware that its name and logo were prominently displayed on the advertisement and solicitation. In conjunction with the other indicia in the case, not the least of which is that the advertisement and solicitation was sent by Chase and the application for insurance contained on the payment part of the billing statement was returned to Chase, a person of average education and intelligence would reasonably believe that Chase was acting as an agent for the insurer or that Chase was, in fact, the insurer itself.
Chase is liable under General Business Law § 350 for authorizing the publication of false and misleading advertising for the LifePlus Credit Insurance for Chase Cardmembers. “The term ‘false advertising’ means advertising, including labeling, of a commodity * * * if such advertising is mislead *396 ing in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary and usual.” (General Business Law § 350-a [1].)
The court finds that the average reasonable consumer would reasonably believe that the payment of the account’s monthly premium would automatically cover the account with credit unemployment insurance. As previously noted, the LifePlus Credit Insurance for Chase Cardmembers advertisement and solicitation clearly states: “If you have previously checked this box, there is no need to re-enroll. Your account is covered.”
Under General Business Law § 350-e (3) and § 349 (h) an injured person may bring an action to enjoin the unlawful act or practice of false advertising, and the court may award treble damages up to $1,000 and may award reasonable attorney’s fees to the prevailing party. The Civil Court lacks the equitable jurisdiction to issue such an injunction. (CCA art 2.) Moreover, plaintiffs have proceeded without the benefit of legal counsel and seek only damages in the instant action.
The court finds that the plaintiffs are entitled to recover under General Business Law § 350. The solicitation for the LifePlus Credit Insurance for Chase Cardmembers was false and misleading. A reasonable consumer acting reasonably under the circumstances and receiving the advertisement and solicitation as a part of the monthly billing statement on the account would reasonably believe that the credit unemployment insurance had been made a part of their coverage without the need for them to take any further action. A reasonable consumer would reasonably believe that the account was covered by insurance in the event of unemployment simply as a result of making the monthly payment which contained the premium assessed by Chase.
Chase has not shown that it properly fulfilled its duties as an agent in connection with the LifePlus Credit Insurance for Chase Cardmembers. Chase failed to show that insurance had actually been obtained, that the premiums collected were forwarded to any insurer, or that any action was taken when it received notification of the plaintiffs’ claim.
*397 Finally, this failure to present evidence creates an over-all impression that the entire credit insurance scheme was a deceptive act and practice. This record is far too incomplete for this court to make such a finding, however, in this regard it is of some interest to note that Chase never brought an action to seek collection on these defaulted accounts and only raised these claims as counterclaims to the plaintiffs’ action.
Credit insurance is heavily regulated by the State of New York under the Insurance Law. (See, e.g., Insurance Law § 3201 [b] [4] [A]; §§ 3436, 4216; 11 NYCRR parts 185, 186, 187.) The State of New York through statute and regulation has historically protected the purchasers of insurance products of all kinds. There is good reason for strict regulation of insurance as the average consumer has, at best, a very limited understanding of these transactions and the potential for fraud and deception is readily apparent.
For the reasons set forth herein, the court finds in favor of the plaintiffs on their claim and in favor of the defendant on the counterclaims. The complaint is amended to conform to the proof so that there is a complete setoff of the claims. The net recovery of either party is zero.