Bush Terminal Company, Plaintiff, *v.* The Globe and Rutgers Fire Insurance Company of the City of New York, Defendant.

First Department, March 15, 1918.

**Insurance — fire insurance covering property in custody of warehouseman — policies construed — loss of property not stored on premises described in policy — misinformation given to owner of property as to place of storage — liability of warehouseman to owner of property covered by policy.**

Where a policy of fire insurance issued to the plaintiff warehouseman only covered property " while located and contained as described herein, and not elsewhere " and the " rider " attached thereto restricted the policy to their liability as warehousemen and owners of certain stores which were specifically described, the insurer is not liable thereon for a loss by fire of the property of a customer of the plaintiff where it was not stored within the area described in the policy.

But the insurer is liable for said loss on another policy issued to the plaintiff which insured its " legal liability " for all merchandise whether in their custody as common carriers, warehousemen, etc., where the property at the time of loss was stored in a warehouse of the plaintiff within the area described in the second policy.

Said second policy which covered the " legal liability " of the plaintiff in or for all merchandise in its custody insured the liability of the plaintiff to the owner of the merchandise destroyed arising from the fact that the plaintiff had misinformed the owner as to the location of the property so that insurance taken out by the owner was not effective and the plaintiff was required to reimburse said owner. The liability of the plaintiff to the owner was a legal liability covered by the policy whether or no it arose through the plaintiff's misinforming the owner of the location of the property so that the owner lost its insurance, or whether it arose through a violation of the plaintiff's duty as warehouseman by failing to store the property in a particular warehouse.

Motion by the plaintiff, Bush Terminal Company, for a new trial upon a case containing exceptions, ordered to be heard in the Appellate Division in the first instance after the direction of a verdict for defendant at the close of the case, both sides having then moved for the direction of a verdict.

The trial was had at the New York Trial Term in June, 1917.

*Henry Escher, Jr.,* of counsel [*Lawson R. Jones* with him on the brief], for the plaintiff.

*Charles B. Samuels* of counsel [*Coudert Brothers,* attorneys], for the defendant.

DOWLING, J.:

Plaintiff is engaged in business as a warehouseman occupying premises which it owns in the borough of Brooklyn, city of New York. A part of its business is conducted under the name of "Independent Stores" (the name of the former owner of the property) on property bounded by Fortieth street, Fifty-first street, Second avenue and the water front in said borough. The remainder of the business is conducted under its own name in property owned by it to the north of the "Independent Stores." On March 23, 1915, defendant issued its policy of fire insurance to plaintiff in the sum of $50,000 running for one year, and containing the following typewritten "rider," the form thereof being taken in part from the handbook of the New York Fire Insurance Exchange and in part prepared by plaintiff's insurance brokers:

"Bush Terminal Company
"and/or
"Bush Terminal Railroad Company.
"Jointly or Severally as Interest May Appear.
"Legal Liability Form-Liability Not Disclaimed.

---

"$50,000. On their legal liability in or for all merchandise and/or baggage held in their custody as common carriers, warehousemen, wharfingers, forwarders or freighters; also upon their interest in all advances or other charges due or to become due upon all merchandise and/or baggage while contained on the premises and/or tracks of the Bush Terminal Company, the Bush Terminal Railroad Company and/or the Bush Terminal Buildings Company, in the Borough of Brooklyn between Twenty-eighth Street and Sixty-fifth Street, but this policy not to cover on cars or their contents, except upon such cars and contents as are not under the protection of marine policies."

On February 19, 1916, defendant also issued to plaintiff

its policy of fire insurance in the sum of $25,000, running for one year, insuring the property in question " while located and contained as described herein, and not elsewhere," and containing the following typewritten rider, prepared by plaintiff's insurance brokers:

" Bush Terminal Company.

" $25,000.   On their legal liability as warehousemen and owners of Independent Stores, situate between Fortieth and Fifty-first Streets and West of Second Avenue, Borough of Brooklyn, City of New York.

" It is hereby understood and agreed that the premises upon which this policy covers in the Borough of Brooklyn, City of New York, are those of the Bush Terminal Company, Bush Terminal Railroad Company and Bush Terminal Buildings Company.

" The liability of this Company is restricted to the legal liability of the insured, which may rest upon them in case of fire by reason of omission to notify the owners of merchandise in Independent Stores that the same has been stored therein, or through the giving of the wrong number of the store to any owner of such merchandise, or by reason of failure to promptly put merchandise in store before warehouse receipt is issued, or any other legal liability of the insured which may be incurred by error or negligence of the insured or its employees through which error or negligence the owner of merchandise stored with them on their premises has failed to provide proper fire insurance upon said merchandise, at the time any fire may occur."

In February, 1916, while said policies of insurance were in force, plaintiff received from G. S. Alexander & Co. 564 bags of muriate of potash and issued its receipt therefor in the following form:

" Bush Terminal.   Independent Stores.   Foot of 40th to 51st Sts., Brooklyn.   New York, Feb. 29, 1916.   No. 149,710. New York Office, 100 Broad St.

" Received in warehouse No. 7 for account of G. S. Alexander and Co. 564 (five hundred and sixty-four) bags said to contain Muriate Potash, Ex Bush Str. Cargo 122 B. Order and condition unknown.   To be delivered according to the endorsement hereon, but only on the surrender and

cancellation of this receipt and on the payment of the charges payable thereon.

" Bush Terminal Company, Edw. G. Parpart, Asst. Secretary. Storage six cents pr. mo. Labor eight cents. Charges from Feb. 23, 1916."

After receiving said warehouse receipt, G. S. Alexander & Co., in reliance thereon, took out insurance to the amount of $28,000 in the Law, Union and Rock Insurance Co., Ltd., of London, representing that the potash was stored in said warehouse No. 7, as the receipt from plaintiff showed. Warehouse No. 7 was one of those conducted by plaintiff under the name " Independent Stores " and was located within the territory between Fortieth and Fifty-first streets and west of Second avenue. As a matter of fact, the bags of potash never were stored in warehouse No. 7, nor in the territory described, but had been stored by plaintiff in warehouse E, one of those conducted by plaintiff in its own name and located to the north of the described territory. On March 2, 1916, a fire broke out in warehouse E, causing damage to the potash, the amount of which was subsequently fixed by appraisal at the sum of $6,924. G. S. Alexander & Co. were refused payment by its insurer of the amount of their loss because the place where the goods had been stored had been misrepresented by it to the insurer. Thereupon G. S. Alexander & Co. demanded that plaintiff pay it the amount of said loss, which had been caused by plaintiff's misrepresentation of the location of the goods stored, thus leading to a similar misrepresentation to Alexander's insurer, and plaintiff on August 1, 1916, paid to G. S. Alexander & Co. the amount of said loss, $6,924, and having demanded that defendant reimburse it for said amount so paid, defendant denied liability under its policies and the present action was brought. Upon the trial, a verdict having been directed for defendant, the exceptions were directed by the trial court to be heard in this court in the first instance.

Considering first the defendant's policy for $25,000, it is clear that the terms of the rider would impose liability upon defendant thereunder, were it not for the limitation of the area within which responsibility was required to arise. For plaintiff had given the wrong number of the store within which the merchandise of G. S. Alexander & Co. was stored,

and the latter suffered the loss of the protection of the policy of fire insurance because of that error on plaintiff's part. But the coverage of the policy was explicitly limited to the tract embraced within Fortieth and Fifty-first streets, Second avenue and the water front, and the goods of G. S. Alexander & Co. were never within that area, were never stored therein and were not damaged by the fire therein. The loss which G. S. Alexander & Co. sustained was by reason of the presence of their goods outside the prescribed territory and in a warehouse therein which their policy of insurance did not cover. No act of plaintiff within the limited area caused the loss to Alexander, and the error in misdescription provided for by the " rider " can fairly be interpreted to mean only an error in informing the owners of merchandise stored within the area described (which is that of the Independent Stores) as to which of the stores therein the goods were actually stored in. It follows that defendant was not liable under its $25,000 policy, and the defendant's exceptions to such a holding by the trial court should be overruled.

The remaining policy for $50,000 covers the entire scene of plaintiff's various activities from Twenty-eighth street to Sixty-fifth street, so that warehouse E is embraced within its scope. The question is whether plaintiff's liability to G. S. Alexander & Co. is such a legal liability in or for merchandise held in its custody as the policy covered. It is quite true that the $25,000 policy was an " errors and omissions " policy, limited both in scope and as to area covered, but it by no means follows that any inference is deducible therefrom that the larger policy did not also insure against errors and omissions, if they created a legal liability against the warehouseman. The terms of the " rider " attached to the $50,000 policy, so far as applicable hereto, bound defendant to pay to plaintiff, up to said amount, in reimbursement of the latter's legal liability in and for all merchandise held in its custody as warehouseman. The element of a fire causing damage to property must be present in order to comply with the terms of the policy. But if a fire has occurred causing damage, for which plaintiff is legally liable as warehouseman to one having stored goods with it, it seems to me that defendant is bound under its policy, regardless of the theory or facts

on which the law bases that liability.   The question presented under the $50,000 policy would then seem to resolve itself into this: Was plaintiff, as a warehouseman, legally liable to G. S. Alexander & Co. for any violation of its duty or obligation as such warehouseman, which had caused loss to Alexander, when fire had damaged the latter's goods stored with plaintiff?   In *Mortimer* v. *Otto* (206 N. Y. 89) it was held that where there was an agreement by the warehouseman that he would keep the goods intrusted to him stored in a specified room in a designated building, he was liable if the goods were destroyed by fire in a different building in which he had placed them, which fire did not reach the designated building; and this without any proof of negligence on his part.   This was based upon the evidence of a specific agreement to store in a designated place, and a breach thereof by the warehouseman.   While there was no specific agreement in the case at bar as to the precise building in which the goods should be stored, I think that the issuance of the warehouse receipt to G. S. Alexander & Co. by plaintiff, designating warehouse No. 7 as the place in which the former's goods were stored, constituted not only a representation that the goods were then actually contained therein, but a contract that they should remain and be housed therein until at least notice of a proposed change was given to Alexander.   For the plaintiff several days before delivering said receipt had also notified G. S. Alexander & Co. " for insurance purposes," that their 564 bags of muriate of potash would be stored in warehouse No. 7.   This, it seems to me, adds force to the contention that both parties understood and agreed that the goods were to be stored in that warehouse, and brings the case within the rule laid down in the case cited, that for a breach of such an agreement the warehouseman is legally liable, if damage ensues; and that damage did ensue, for the goods were damaged by fire while in a different building, and there is no contention that the fire extended to warehouse No. 7, where the goods were supposed by Alexander to be stored.   This would have made plaintiff liable to Alexander, irrespective of the question of the latter having lost the protection of its policy of fire insurance through plaintiff's misrepresentation as to the

whereabouts of the goods.   Nor do I see any reason to doubt that plaintiff, as a warehouseman, was also legally liable to Alexander for the misrepresentation as to the place where the goods were stored, whereby the latter was deprived of the benefit of its fire insurance policies.   For having given notice of the intended place of storage for the very purpose of enabling Alexander to procure fire insurance, and the latter having relied on the information thus given and also represented that its goods were stored in that place, plaintiff was liable for any loss which Alexander sustained in reliance on the misrepresentation.   And the information was given by plaintiff in its capacity as a warehouseman, the goods in question were in its custody as such and the liability attached solely because of acts done by or in that relationship and having reference to goods in its custody as such.   While, therefore, an " errors and omissions " policy might more explicitly provide for such a state of affairs as existed in this case, I am of opinion that the " legal liability " clause adequately covered it and that plaintiff was entitled to recover the amount sued for, under the $50,000 policy.   Exceptions to the direction of a verdict in favor of defendant and to the dismissal of the complaint herein are, therefore, sustained, and there being no disputed question of fact in the case, judgment is directed in favor of plaintiff in the sum of $6,924 with interest, amounting to $225.03, with the costs of this action and with costs to plaintiff in this court.

Scott, Laughlin, Smith and Davis, JJ., concurred.

Exceptions sustained and judgment ordered for plaintiff as directed in opinion, with costs.   Order to be settled on notice.