**TRIOLOGY VARIETY STORES, LTD., also known as Trilogy Variety Stores, Ltd., and Primo Philip Profeta, Plaintiffs,**

v.

**CITY PRODUCTS CORPORATION, Defendant.**

**No. 80 Civ. 6418 (CBM).**

United States District Court, S. D. New York.

June 22, 1981.

Jacobson & Jacobson by Murray Norman Jacobson, New City, N. Y., for plaintiffs.

Cadwalader, Wickersham & Taft by John J. Walsh, Richard H. Walker and H. Peter Haveles, Jr., New York City, for defendant.

## MEMORANDUM OPINION

MOTLEY, District Judge.

This is a diversity action removed from the Supreme Court, County of Rockland,

pursuant to 28 U.S.C. § 1441, in which plaintiffs, Triology Variety Stores, Ltd. (Triology) and Primo Philip Profeta (Profeta), seek injunctive relief and damages on multiple claims arising out of plaintiffs' dual relationships, as franchisee and sublessee, with defendant, City Products Corporation (City Products). Defendant has moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the entire complaint for failure to state a claim upon which relief can be granted.

For the purposes of this motion, the allegations of the complaint are to be construed in plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Defendant City Products, as tenant, entered into a lease agreement in June, 1965, with Bridon Realty Company (Bridon Realty), as landlord, for premises located at the Clarkstown Plaza Shopping Center in New City, New York. The particular premises at issue are known as 204 South Main Street, New City, New York, and were to be used by City Products, as the franchisor, as a "Ben Franklin Store" for the sale of goods to the general public. This lease commenced on January 1, 1966, and terminated on January 31, 1976. The tenant, City Products, was given options to renew the lease for either a single ten year period or for up to two successive five year periods.

In July, 1965, plaintiff Triology, at that time owned by Louis and Rita Iessi, entered into a franchise agreement with City Products whereby Triology became City Products' franchisee with the right to use City Products' trade name of "Ben Franklin Store" and to carry out the business of selling franchise goods to the public. Concurrent with their execution of the franchise agreement, the Iessis, as owners of Triology, entered into a second agreement with City Products whereby Triology became the sublessee of City Products with respect to the same premises for which the latter held the prime lease as the tenant of Bridon Realty. This subtenancy commenced on January 1, 1966, and terminated on January 15, 1976.

City Products exercised its option to renew the prime lease with Bridon Realty for a single five year term, such term commencing on February 1, 1976, and terminating on January 31, 1981. Likewise, a subsequent renewal of the sublease agreement between City Products and Triology extended its operation through January 30, 1981.

Plaintiff Profeta is the present owner of Triology, having purchased its business and stock from the Iessis in November, 1978 for $63,000.00. Because he was buying one of its existing franchises, Profeta was first screened and approved by City Products and the latter was represented at the closing of the transaction of sale. A new franchise agreement, with a termination date of December 31, 1983, was prepared for Profeta and executed by the parties. At the time of Profeta's purchase, the remaining term of Triology's sublease with City Products was just over two years. Because the franchise agreement, at paragraph 11(c), permits City Products to terminate in the event the franchise is moved to a location other than that at which franchise operations were commenced, Profeta was concerned that the business in which he was investing might not outlast the remaining term of the sublease. It is alleged that Profeta, before purchasing Triology, therefore sought and obtained promises from various agents and employees of City Products, including T. B. Jennings, Director, Franchise & Real Estate Development, that as long as the franchise remained in good standing, the sublease would be renewed. These promises, although never reduced to writing, and the extent of plaintiffs' reliance thereon, form the basis of this lawsuit.

In July, 1980, Profeta, on behalf of himself and Triology, contacted City Products and requested a renewal of the sublease. Approximately two weeks later City Products notified Bridon Realty and Triology that it would not renew either the sublease to Triology or its own prime lease with the landlord, both of which agreements were to terminate as of January 31, 1981.

It is plaintiffs' contention that in the absence of City Products' assurances that the sublease would be renewed, Profeta would not have purchased the stock of Triology and would not, along with Triology, have had any interest in the ownership of a Ben Franklin franchise that could be terminated upon expiration of the then existing sublease only twenty-six months thereafter.

The first cause of action set forth in the complaint alleges that because of City Products' refusal to renew the sublease, plaintiffs are prevented from performing the franchise agreement since the place of performance is an integral term thereof. Plaintiffs claim that this is a breach of the franchise agreement and seek specific performance of that agreement in the form of an order directing City Products to execute a renewal of its lease with Bridon Realty and its sublease with plaintiffs, such sublease to terminate on December 31, 1983, along with the franchise agreement.

The second cause of action seeks reformation of the franchise agreement to permit its performance at another location. Also sought are damages for the cost of increased rental and renovation of new premises.

The third cause of action seeks damages for the full value of Triology, which plaintiffs contend has now been "rendered valueless by the wrongful and willful conduct of the defendant."

The fourth cause of action alleges that plaintiffs, with the knowledge of defendant, in reliance upon the latter's oral promises to renew the sublease, spent $10,000.00 to renew and refurbish the premises and have consequently been damaged in that amount.

The fifth and final cause of action claims that Profeta's purchase of Triology for $63,000.00, and his investment of an additional $20,000.00 to provide working capital, would not have been made but for his reliance on City Products' oral promises. Profeta further claims that City Products induced his purchase of Triology and investment of working capital by knowing that he would make such purchase and investment in reliance on those promises.

For the reasons set forth below, defendant's motion to dismiss is granted, with the exception of the fourth and fifth causes of action, which survive the motion.

Plaintiffs' first cause of action, that they were prevented or hindered from performing their obligations under the franchise, fails to state a claim upon which relief may be granted. This claim is based in part on a theory that, by refusing to renew its lease with Bridon Realty, defendant breached an implied term of affirmative cooperation or an implied promise not to prevent or hinder plaintiffs' performance of the franchise agreement.

■ While it is true that the franchise agreement allows defendant to terminate upon relocation of the franchise from the subleased premises, and that defendant has refused to renew plaintiffs' sublease for the duration of the franchise period, plaintiffs have failed to allege how they have been prevented or hindered from negotiating their own lease with the landlord. Defendant chose not to renew its lease with Bridon Realty and advised plaintiffs of that decision in a letter dated July 16, 1980. That letter read in part:

> This notice will provide you with more than six months time to make your own arrangements with the Landlord for continued tenancy if you wish to continue to conduct a retail business in this location.

Complaint, Exhibit V. The letter went on to give plaintiffs the name, address and telephone number of the individual landlords. Thus, because plaintiffs have wholly failed to negotiate their own lease with the landlord they cannot claim that their performance of the franchise agreement has been hindered or prevented by defendant. Since the court holds that plaintiffs' first cause of action fails to state a claim, it need not reach the question of whether any implied terms or promises should be read into the franchise agreement.

■ Because the second cause of action, which seeks reformation of the franchise agreement and its specific performance as

reformed, is also based on an allegation that defendant has made plaintiffs' performance impossible, it too must be dismissed for the reasons stated above. Plaintiffs have failed to allege any true prevention, hindrance or impossibility of performance.

The first cause of action also fails if interpreted to rely on the breach of an oral promise to renew the sublease. The renewal period, as allegedly promised, was to run at least until the termination of the franchise agreement on December 31, 1983. Because such an agreement would therefore create a contract for the leasing of real property for a longer period than one year, it must be in writing, as required by New York's statute of frauds.[1] The purpose of the statute, in general and with respect to the sale or lease of realty in particular, has been described as "to remove uncertainty and prevent imposition through the assertion of unfounded and fraudulent claims, by requiring that certain contracts 'or some note or memorandum thereof' be in writing." *Villano v. G & C Homes, Inc.*, 46 A.D.2d 907, 362 N.Y.S.2d 198 (2d Dept. 1974), *appeal dismissed*, 36 N.Y.2d 918, 372 N.Y.S.2d 655, 334 N.E.2d 601 (1975). However, in lieu of a proper written instrument, the statute recognizes that the problems against which the writing is intended to guard can also be prevented by providing for proof of an agreement through evidence of its partial performance. General Obligations Law § 5–703 subdivision 4 states:

4. Nothing contained in this section abridges the powers of courts of equity to compel the specific performance of agreements in cases of part performance.

Thus, in the absence of the requisite part performance, an oral promise relating to an interest in real property, such as that asserted by plaintiffs herein, is barred by the statute of frauds. Plaintiffs argue that the oral promise in question is taken out of the statute's operation by performance consisting of: (1) entry onto the premises; (2) use of the premises to carry out the franchise agreement; (3) payment of rent; and (4) making improvements costing $10,000.00.

The law of New York on the requirements for part performance of an unwritten contract was recently summarized in *Club Chain of Manhattan, Ltd. v. Christopher & Seventh Gourmet, Ltd.*, 74 A.D.2d 277, 427 N.Y.S.2d 627 (1st Dept. 1980) (*Club Chain*), which involved an alleged oral agreement for the renewal and modification of a billboard lease. In *Club Chain*, the court emphasized the necessity "that part performance be 'unequivocally referable' to the purported agreement in order to create an enforceable oral agreement." *Club Chain, supra*, 427 N.Y.S.2d at 630, *citing Burns v. McCormick*, 233 N.Y. 230, 232, 135 N.E. 273 (1922), and *Woolley v. Stewart*, 222 N.Y. 347, 118 N.E. 847 (1918). The court went on to state that, while the payment of money is insufficient to constitute part performance, "other acts, such as possession or improvements, when combined with the payment of rent, may be sufficient." *Id.*

■ Defendants argue that plaintiffs' entry on and use of the premises for the purpose of carrying out the franchise agreement cannot be considered "unequivocally referable" to the alleged oral agreement to renew the sublease because such acts were a requirement of the franchise agreement. The court agrees. Similarly, the payment of rent was a requirement of the sublease itself and therefore is not unequivocally referable to an agreement to renew it.

■ The same conclusion, however, does not so easily flow from plaintiffs' making of improvements. Neither the franchise agreement nor the sublease obliged plaintiffs to make any improvements to the premises beyond repairs and maintenance. Nevertheless, it does not follow that plaintiffs' improvements are unequivocally re-

---

1. The applicable statute, General Obligations Law § 5–703, states in pertinent part:

2. A contract for the leasing for a longer period than one year, or for the sale, of any real property, or an interest therein, is void unless the contract or some note or memorandum thereof, expressing the consideration is in writing, subscribed by the party to be charged, or by his lawful agent thereunto authorized by writing.

ferable to the purported agreement to renew the sublease. The alleged agreement is one to renew the existing sublease *on its original terms*. *See* Complaint, paragraph 23. Because the sublease does not call for plaintiffs to make improvements, such improvements can hardly be seen as unequivocally referable to an oral agreement to renew that sublease. The fact that plaintiffs incurred significant expenses in making improvements, therefore, does not constitute part performance of the alleged agreement between the parties.

The facts in *Club Chain* are distinguishable from those in the instant action. In *Club Chain*, plaintiff's claim of part performance centered on its payment of an increased rental for billboard space, coupled with significant expenditures for new art work on the billboards. Plaintiff's increased rental payments tended to prove the purported agreement because that agreement called for such payments: the acts performed were acts for which the parties had allegedly contracted. The same was true in *Snay v. Wood*, 50 A.D.2d 651, 374 N.Y.S.2d 809 (3d Dept. 1975), in which the alleged acts of a purchaser of real property of entering into possession, making required payments towards the purchase price, expending large amounts of money and time on improvements and paying taxes and water rents, to the extent that they were the obligations of the owner of the property, tended to prove an oral agreement to convey the property.

In the instant action, on the other hand, the only part performance that is not attributable to plaintiffs' preexisting obligations under either the franchise agreement or the sublease is the alleged making of improvements. However, this "part performance" is not "part" of the alleged agreement between the parties to renew the sublease because the sublease did not require the making of improvements. Plaintiffs therefore have failed to state a claim based on part performance of an oral agreement. Rather, plaintiffs' claim that they would not have been willing to expend $10,000 on improvements for premises that they would occupy for a relatively short time and on a business that could be forced to close upon expiration of the present sublease, in the absence of an oral agreement, sounds in promissory estoppel, discussed below.

■ The third claim asserted by plaintiffs, that Triology has been rendered valueless by the wrongful and willful conduct of the defendant, and seeking damages for the full value of the business, fails to state any cause of action notwithstanding the most liberal construction of the complaint. At best, as recognized by plaintiffs at page 11 of their memorandum in opposition to the motion, this "cause of action" is merely a measure of damages under those claims which seek damages as a remedy. As a cause of action, however, this claim is dismissed.

■ The court finds that plaintiffs' fourth and fifth causes of action state a claim under the doctrine of promissory estoppel, rather than under a theory of breach of an oral promise. Plaintiffs allege that City Products knowingly induced Profeta's purchase of Triology, his investment of working capital in the business, and his expenditures for renewing and refurbishing the premises, by causing him to rely on the promise that the sublease would be renewed beyond its January 31, 1981 termination date, as long as the franchise was in good standing.

The New York law on promissory estoppel was well stated in *James King & Son, Inc. v. DeSantis Construction No. 2 Corp.*, 97 Misc.2d 1063, 413 N.Y.S.2d 78 (Sup.Ct. 1977) (*James King & Son*) where a general contractor sought to recover damages incurred by the subcontractor's failure to comply with its oral bid. The intent of this doctrine, the court stated, is "to avoid the harsh results of allowing the promisor to repudiate, when the promisee has acted in reliance upon the promise." *Id.* at 81. The elements of the doctrine were set forth as:

a promise clear and unambiguous in its terms; reliance by the party to whom the promise is made, such reliance to be both reasonable and foreseeable; the party as-

serting the estoppel must be injured by his reliance.

*Id.* The evidence in *James King & Son* disclosed that the defendant subcontractor had made an oral bid to the plaintiff contractor on which the latter had reasonably and foreseeably relied in bidding on a construction project. The court invoked the doctrine of promissory estoppel and held defendant liable for damages upon its failure to comply with the terms of its oral bid.

The Court of Appeals for this Circuit has recognized that New York State courts apply promissory estoppel beyond the limitations of charitable subscriptions. *See, e. g., Bethlehem Fabricators, Inc. v. British Overseas Airways Corp.*, 434 F.2d 840 (2d Cir. 1970), where, in a dispute between a contractor and subcontractor over a payment bond, the Court of Appeals found the doctrine not to be limited to charitable subscriptions and cited several New York cases[2] which imposed liability on those who failed to fulfill promises that there would be insurance coverage or who caused insurance to lapse. The Second Circuit extended the doctrine further in *Schmidt v. McKay*, 555 F.2d 30 (2d Cir. 1977), an action against union officials involving alleged promises to credit plaintiff's past service for pension plan purposes. *See also Wabco Trade Co. v. S. S. Inger Skou*, 482 F.Supp. 444 (S.D.N.Y. 1979).

In a situation somewhat analogous to that presented in the instant action, the court in *Special Event Entertainment v. Rockefeller Center*, 458 F.Supp. 72 (S.D.N.Y.1978), held, in denying defendants' motion to dismiss, that the elements of equitable estoppel[3] had been pleaded with respect to an alleged agreement to lease Radio City Music Hall. Those elements were stated to be:

1. An act constituting a concealment of facts or a false misrepresentation;

2. An intention or expectation that such acts will be relied upon;

3. Actual or constructive knowledge of the true facts by the wrongdoer;

4. Reliance upon the misrepresentations which causes the innocent party to change its position to its substantial detriment.

*Id.* at 76. In applying the doctrine to the facts before him, District Judge Duffy found plaintiff's assertions that it was misled by defendant into believing that it would be only a matter of time before the lease would be executed, and that plaintiff had expended hundreds of man hours and thousands of dollars in preparation for taking possession of the Music Hall, were sufficient to state a claim which avoided the effect of the Statute of Frauds.

Given the willingness of both state and federal courts to apply New York's doctrine of promissory estoppel to increasingly divergent fact patterns, this court sees no reason why the doctrine should not be available here.

Defendant, in support of its motion to dismiss the complaint, relies heavily on the opinions of both the district court and the court of appeals in *Philo Smith & Co., Inc. v. USLIFE Corp.*, 420 F.Supp. 1266 (S.D.N.Y.1976), *aff'd*, 554 F.2d 34 (2d Cir. 1977), an action to recover a finder's fee allegedly

---

**2.** *Siegel v. Spear & Co.*, 234 N.Y. 479, 138 N.E. 414 (1923); *cf. International Products Co. v. Erie R. Co.*, 244 N.Y. 331, 155 N.E. 662 (1927); *Bush Terminal Co. v. Globe & Rutgers Fire Ins. Co.*, 182 App.Div. 748, 169 N.Y.S. 734 (1st Dept. 1918) *aff'd* 228 N.Y. 575, 127 N.E. 909 (1920); *Spiegel v. Metropolitan Life Ins. Co.*, 6 N.Y.2d 91, 188 N.Y.S.2d 486, 160 N.E.2d 40 (1959).

**3.** One commentator has noted that the remedial guise under which the alleged promisor is estopped to plead the Statute of Frauds is frequently obscured by court decisions which fail to distinguish adequately between promissory estoppel and equitable estoppel. *See Note, Promissory Estoppel as a Means of Defeating the Statute of Frauds*, 44 Fordham L.Rev. 114, 120 (1975). Equitable estoppel depends on a misrepresentation of an existing fact, while promissory estoppel requires a promise concerning future intent. It appears that the court in *Special Event Entertainment v. Rockefeller Center, supra*, might have applied the doctrine of promissory estoppel, rather than equitable estoppel, since the plaintiff in that case alleged that it relied to its detriment on defendants' oral promise to execute a written lease for Radio City Music Hall.

earned by plaintiffs pursuant to an oral promise to extend a written agreement between the parties that had expired before the acquisition involved was accomplished. While recognizing that promissory estoppel, however limited in application, is an accepted doctrine in New York law, the district court nevertheless directed a verdict for defendant and the complaint was dismissed. The court held that plaintiffs had failed to prove (1) that their acts of reliance were unequivocally referable to the defendant's alleged promises, (2) that such promises were made with intent to defraud, or (3) that plaintiffs' acts of reliance resulted in substantial injury. However, in affirming, the Second Circuit, *per curiam*, limited its holding to plaintiffs' failure to prove substantial injury, excluding the case from "that limited class of cases where the circumstances are such as to render it unconscionable to deny the promise upon which the plaintiff has relied." 554 F.2d at 36.

It is the finding of this court that plaintiffs have set forth a valid claim of substantial injury for which it would be unconscionable to deny them the benefits of the promises upon which they allegedly relied. This requirement is met by plaintiffs' allegation that only upon the inducement of defendant's promises to renew the sublease did they invest a total of $93,000.00 in the purchase of the franchise and business, in capital expenditures, and in improvements to the premises.

The court notes that the Second Circuit, in *Philo Smith, supra,* in light of its decision that plaintiffs had failed to show substantial injury, refrained from expressing a view on the district court's holdings with respect to the requirements that the acts of reliance be unequivocally referable to the alleged promise and that there be an intent to defraud. The court in fact stated that plaintiffs had raised "substantial questions concerning the legal and factual bases for those holdings." 554 F.2d at 35 n. 1. Thus, defendant's contention in the instant case that the application of promissory estoppel requires acts of reliance unequivocally referable to the alleged agreement has not found approval by the Court of Appeals for this Circuit. Neither does such a requirement appear to be recognized by the New York State courts. *See James King & Son, Inc., supra; Swerdloff v. Mobil Oil Corp.,* 74 A.D.2d 258, 427 N.Y.S.2d 266 (2d Dept.), *leave to appeal denied,* 50 N.Y.2d 913, 431 N.Y.S.2d 523, 409 N.E.2d 995 (1980).[4]

The requirement of fraud also finds no acceptance by the Second Circuit, and, contrary to defendant's assertions, New York State and federal courts have frequently applied the doctrine of promissory estoppel in the absence of a finding of fraud.[5] In any event, plaintiffs allege that they were knowingly induced to act in reliance on defendant's promises. *See* Complaint, paragraphs 37 and 38.

Finally, a recent New York case which applied the doctrine of promissory estoppel must be distinguished. *Swerdloff v. Mobil Oil Corporation, supra,* involved an alleged oral promise that Swerdloff, manager of a service station for Mobil's subsidiary, would be granted a dealership if and when the

---

4. The "unequivocally referable" test of the district court's opinion in *Philo Smith, supra,* was cited and relied upon, *inter alia,* in *Chromalloy American Corp. v. Universal Housing Systems of America, Inc.,* 495 F.Supp. 544 (S.D.N.Y. 1980), where the court refused to apply promissory estoppel with respect to an alleged oral joint venture agreement. However, it must be noted, as did Judge Duffy in *Special Event Entertainment, supra,* 458 F.Supp. at 76 n.6, with respect to the district court's opinion in *Philo Smith,* that:

the requirement that the reliance be "unequivocally referable" to the contract in question appears to have application to the doctrine of part performance rather than equitable estoppel. *See Bright Radio Laboratories v. Coastal Commercial Corp.,* 4 A.D.2d 491, 494, 166 N.Y.S.2d 906, 909 (1st Dept. 1957), *aff'd,* 4 N.Y.2d 1021, 177 N.Y.S.2d 526, 152 N.E.2d 543 (1958); *Bakhshandeh v. American Cyanamid Co.,* 8 A.D.2d 35, 185 N.Y.S.2d 635 (1st Dept. 1959); *Burns v. McCormick,* 233 N.Y. 230, 135 N.E. 273 (1922).

5. *See, e. g., James King & Son, Inc. v. Desantis Construction No. 2 Corp., supra; Swerdloff v. Mobil Oil Corporation, supra; Schmidt v. McKay, supra; Wabco Trade Co. v. S. S. Inger Skou, supra.*

station was converted to a straight dealership. The trial court's order dismissing the complaint at the close of plaintiff's case was affirmed on appeal, the court stating that: "all authorities ... require that 'the circumstances be such as to render it unconscionable to deny' the oral promise upon which the promisee has relied (3 Williston, Contracts [3d ed.], § 533A, p. 801; *see Philo Smith & Co. v. USLIFE Corp.*, 554 F.2d 34, 36 (2d Cir.))." 427 N.Y.S.2d at 269. The plaintiff station manager alleged the following three sets of circumstances to justify the application of promissory estoppel: (1) that upon encountering bookkeeping problems he was assured by defendant Mobil that it would help (and it did), and that he would become the dealer upon conversion; (2) that he advised Mobil of opportunities presented to him to enter other areas of business and had declined to purchase an interest in an insurance agency because of his belief that Mobil would advance his status from manager to dealer; and, most important, (3) that he worked "endless hours" to improve the business, not to benefit a subsequent dealer, but to assure his own well being when the station would become his dealership. 427 N.Y.S.2d at 268. The court concluded that these circumstances, assuming they were true, were not so egregious as to render application of the statute of frauds unconscionable. Plaintiff could not rationally say he stayed on despite the bookkeeping problem when that problem was immediately solved to his satisfaction. Likewise, plaintiff's choice of foregoing another business venture did not make defendant's assertion of the statute of frauds unconscionable. And finally, plaintiff's "endless hours" and devotion to service could easily be attributed to his hope of maintaining first place in line for the dealership. *Id.* at 270.

This court concludes that plaintiffs herein have alleged circumstances sufficiently egregious as to render application of the statute of frauds unconscionable, in contrast to the allegations made in *Swerdloff*. No satisfactory explanation has been offered of why plaintiffs would have invested as much as $93,000.00 in this enterprise unless they had reason to believe the investment was for a longer term than twenty-six months. Certainly, expenditures of $10,000.00 on lasting improvements to the premises would make little sense in the absence of the promise or assurance of a long term tenancy. Thus, even though plaintiffs may have been free to negotiate their own lease with the landlord, Bridon Realty, and thereby remain on the premises and avoid loss of their franchise, they should nevertheless be given the opportunity to prove at trial that defendant's promises to renew the sublease reasonably assured them that they would not be confronted with that problem, at least until expiration of the franchise agreement in 1983. It would be unconscionable to apply the statute of frauds in these circumstances. Accordingly, defendant's motion to dismiss the complaint is denied with respect to plaintiff's fourth and fifth causes of action.