**UNITED MAGAZINE CO., Plaintiff,**

v.

**PRUDENTIAL INSURANCE CO., et al., Defendants.**

No. C–2–92–40.

United States District Court,
S.D. Ohio,
Eastern Division.

Jan. 27, 1995.

Gerald Linden Draper, Thompson, Hine & Flory, Columbus, OH, Dana Gillman Rinehart, Dublin, OH, for plaintiff.

James Erwin Pohlman, Robert Ward Trafford, Porter, Wright, Morris & Arthur, Columbus, OH, for defendants.

## ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court upon Defendant's Motion for Summary Judgment (Doc. no. 81) and Memorandum in Support (Doc. no. 83), Plaintiff's Memorandum in Opposition (Doc. no. 101), and Defendant's Reply (Doc. no. 95)[1]. Defendant has requested

---

1. Plaintiff's original opposing memorandum was returned without prejudice to refiling as being

oral argument on the motion. However, the Court finds that the issues raised in the motion have been fully briefed and that oral argument is not necessary. For the reasons stated below, Defendant's motion is granted in part and denied in part.

## I. *Factual Background*

Plaintiff United Magazine Company (Unimag) brings this action against Defendants The Prudential Insurance Company of America (The Prudential), Prudential Capital Corporation (Prudential Capital), and Prudential Equity Investors, Inc. (Prudential Equity). Plaintiff brings claims for: (1) breach of contract regarding an "Agreement in Principle" between Plaintiff and Prudential Capital (Count II); (2) promissory estoppel regarding proposed debt and equity financing (Count IV); (3) breach of contract by Prudential Equity regarding a "Stock Purchase Agreement" between Plaintiff and Prudential Venture Partners II (Prudential Venture) (Count I); and (4) tortious interference by The Prudential and Prudential Capital (Count III).

Plaintiff Unimag is a wholesale distributor of magazines, books and periodicals in the New York metropolitan area. Plaintiff is headquartered in Ohio. The Prudential is a mutual life insurance company of which Prudential Capital and Prudential Equity are subsidiaries.[2] Prudential Equity is the successor to Prudential Venture Capital Management, Inc. (Prudential Venture Capital), the general partner of Prudential Venture.

In 1989, Unimag engaged the services of Oppenheimer & Co. (Oppenheimer), an investment banking firm, to assist it in obtaining financing for certain transactions, including acquisition of an entity known as Yankee News Company, Inc., to be completed by December 31, 1989. In November, 1989, Oppenheimer solicited Prudential Equity in an effort to obtain $10 million in equity financing. Prudential Equity agreed to proceed on the proposed transaction and began a due

diligence process. By November 20, 1989, Prudential Venture had completed due diligence. On that same date, it issued a letter proposal to Unimag in which it proposed to enter into definitive negotiations for the stock purchase. The letter specifically stated that the letter did not constitute a binding contract.

Oppenheimer also contacted Prudential Capital about the possibility of providing debt financing. Prudential Capital expressed interest and in early December 1989 undertook a due diligence and approval process on a proposed purchase of $40 million in debt securities. Prudential Capital issued a one-page preliminary analysis in the form of letter to Unimag later that month in which it stated that such letter was not a commitment.

On December 29, 1989, Paul Herendeen, Vice–President of Prudential Venture Capital, advised Unimag that Prudential Venture Capital would execute the purchase agreement covering ten million shares of preferred stock before the year-end. Herendeen specifically stated that "Prudential Capital has 'hard circled' the debt financing and have indicated that they can close by January 31, 1990."[3]

On January 4, 1990, Prudential Venture and Plaintiff executed a Preferred Stock Purchase Agreement. Under the terms of the Agreement, Unimag was to issue, and Prudential Venture was to purchase, approximately ten million shares of Series A and Series B preferred stock for a total purchase price of $10 million dollars on or before January 31, 1990. The Agreement included several conditions precedent, including the completion of debt financing on terms satisfactory to Prudential Venture.

On January 12, 1990, Prudential Capital signed a Commitment Letter, or "Agreement in Principle", which Unimag subsequently signed on January 15, 1990. Under the

---

violative of the Local Rules. Plaintiff refiled its memorandum after submission of Defendant's reply brief.

**2.** Plaintiff alleges that at the time of the transactions in issue, Prudential Venture was not a subsidiary of Prudential.

**3.** Herendeen has explained the term to mean that the parties had reached a meeting of the minds with respect to terms and had agreed to move forward towards the closing of the transaction.

terms of the Agreement, Prudential Capital and/or Prudential were to purchase $40 million in revolving credit notes and senior term notes of a subsidiary of Plaintiff. Among the conditions precedent to finalization of the proposed transaction were the following: (1) authorization by the Finance Committee of The Prudential's Board of Directors; (2) formal legal documentation approved by the Law Department of Prudential Capital and executed by the parties; and (3) satisfactory completion of Prudential Capital's due diligence process.

On January 18, 1990, Prudential Capital informed Ronald Scherer, president of Unimag, that it would not proceed with the proposed financing. On that same date, Prudential Venture notified Unimag that it was withdrawing from the equity financing proposal.

Subsequently, on January 28, 1990, Hachette Distribution, Inc. purchased 50.1% of Unimag's stock for $15 million. Later developments led Unimag to reacquire Hachette's interest in the company by December of 1990.

Plaintiff seeks to recover $60 million in compensatory damages.

## II. Defendant's Claims

Defendants claim that they are entitled to summary judgment on each of the claims raised in the amended complaint. Plaintiff has withdrawn its claim for punitive damages, so only the remaining claims need be addressed.

Defendant Prudential Capital contends that the breach of contract claim based on the Agreement in Principle must be dismissed under the statute of frauds since Judge Beckwith has held that the statute applies and that as a threshold requirement, Plaintiff must come forward with a signed writing which itself establishes a contractual relationship between the parties. Defendant submits that the only writing offered by Plaintiff is the January 12, 1990 Agreement in Principle, which allegedly does not satisfy the statute since it does not establish a contractual relationship in light of its failure to demonstrate the parties' intent to be bound. Defendant further contends that the breach of contract claim must be dismissed because the conditions precedent contained in the Agreement in Principle were not satisfied.

Further, Defendants contend that the promissory estoppel claim must be dismissed because Plaintiff has failed to show that Defendants made a clear and unambiguous promise to it, Plaintiff did not reasonably rely on promises allegedly made to it, and Plaintiff has failed to show unconscionable injury and acts unequivocally referable to the alleged promise.

In addition, Defendant Prudential Equity contends that it is entitled to summary judgment on the breach of contract claim regarding the Stock Purchase Agreement since all conditions precedent could not be met by January 31, 1990 and time was of the essence for satisfaction of such conditions.

Finally, Defendants claim that they are entitled to summary judgment on Plaintiff's claim of tortious interference because there is no evidence that The Prudential or Prudential Capital acted maliciously. Defendants further allege that they were privileged to interfere with the proposed transactions in order to protect their own financial interests, in view of the relationship among Defendants.

## III. Opinion

### A. Summary Judgment Standard

The summary judgment procedure under Fed.R.Civ.P. 56 is designed to secure a just, speedy and inexpensive determination of any action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Celotex*, 477 U.S. at 321, 106 S.Ct. at 2552; *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir.1992); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989). If the moving party meets this burden, then the

1081

non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *Guarino*, 980 F.2d at 405. The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)). There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp. Corp.*, 898 F.2d 1155, 1162 (6th Cir.1990).

## B. *Applicable State Law*

Judge Beckwith has determined that the law of the State of New York applies to this lawsuit. (Doc. no. 36, p. 5). The parties have not contested her determination. Therefore, the Court will apply New York law.

## C. *Breach of Contract/Agreement in Principle*

### a. *Intent to be Bound*

■ In order for a preliminary agreement to constitute a binding contract under New York law, there must be overall agreement to enter into the binding contract. *Teachers Insurance & Annuity Association v. Tribune Co.*, 670 F.Supp. 491, 497 (S.D.N.Y.1987). There are two types of preliminary agreements: (1) an agreement where the parties have reached complete agreement on all of the issues that require negotiation but they have not yet formalized their agreement; or (2) an agreement where the parties have committed themselves to some major terms, but other terms remain to be negotiated. *Id.* at 498. Judge Beckwith determined that the Agreement in Principle at issue in this case constitutes the second type of preliminary agreement. Therefore, the Court must ascertain whether there is a genuine issue of fact as to whether the requirements for a binding agreement of this type are met in this case.

In making this determination, the following factors must be considered: (1) the language of the agreement; (2) the context of the negotiations; (3) the existence of open terms; (4) partial performance; and (5) the necessity of putting the agreement in final form as indicated by the customary form of such transactions. *Id.* at 499–503; *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72–73 (2nd Cir.1989) (approving and adopting analysis in *Tribune*). The most significant factor is the language of the agreement. *Arcadian*, 884 F.2d at 72.

■ A binding preliminary agreement does not commit the parties to reach their ultimate contractual objective. *Tribune*, 670 F.Supp. at 498. It does, however, bind the parties to negotiate the open issues in good faith in an attempt to reach their objective within the agreed framework. *Id.* Thus, a party to a binding preliminary agreement is precluded from "renouncing the deal, abandoning the negotiations, or insisting on conditions that do not conform to the preliminary agreement". *Id.*

■ There is a strong presumption against the existence of a binding obligation to negotiate where the agreement contains open terms, calls for future approvals, and expressly anticipates future preparation and execution of contract documents. *Id.* at 499. Nonetheless, language reserving rights of approval and conditions such as the preparation and execution of documents satisfactory to the contracting party do not necessarily require the conclusion that the parties did not intend to be bound. *Id.* at 500.

■ The question of whether the parties intended a preliminary agreement to be binding involves a factual inquiry. *See Martin H. Bauman Assoc., Inc. v. H & M Internat'l. Transport, Inc.*, 171 A.D.2d 479, 567 N.Y.S.2d 404, 407 (1991). However, where a question of intent is determinable by written agreements, the question is one of law appropriate for resolution on summary judgment. *Arcadian*, 884 F.2d at 73.

In accordance with the foregoing, the Court will examine the factors outlined in *Tribune* in order to determine whether sum-

mary judgment on Plaintiff's breach of contract claim is appropriate.

#### i. *Language*

■ Upon careful examination of the Agreement in Principle, the Court finds that the issue of whether the parties intended to be bound is not determinable from the face of the Agreement. The Agreement falls somewhere between those at issue in *Tribune* and *Arcadian*. Unlike the agreement before the court in *Tribune*, there is no express language in the Agreement in Principle indicating an intent to be bound. On the other hand, neither is there express language indicating that the parties intended to conduct further negotiations and to issue a binding agreement in the future as there was in the agreement at issue in *Arcadian*. Moreover, while the Agreement in Principle does expressly state that the purchase of securities would be subject to future approvals, final agreement upon the terms and provisions, and satisfactory completion of Prudential Capital's investigation of Plaintiff, these contingencies are not necessarily incompatible with an intent to be bound. They simply give rise to a presumption against a finding that the parties intended to be bound. The Court must look to the remaining language of the Agreement in Principle to determine whether the presumption is overcome. Such language, standing alone, is too ambiguous in this case to preclude Plaintiffs from coming forward with evidence which overcomes the presumption that the parties did not intend to be bound. Therefore, the Court finds that an examination of the remaining factors outlined in *Tribune* is necessary in order to determine whether the parties intended to bind themselves to negotiate in good faith.[4]

#### ii. *Context of the Negotiations*

Defendant Prudential Capital contends that the context of the negotiations demonstrate that it did not intend to be bound to lend Plaintiff $40 million as of January 12, 1990. In support of its contention, Defendant has come forward with evidence which shows that as of that date, the transaction was in the midst of the approval process and that due diligence issues, specifically the significance of men's magazine sales and possible ties to organized crime, remained. Defendant has also come forward with internal documents showing that formal documentation was anticipated.

In response, Plaintiff notes that language which Defendants had used in earlier documents explicitly stating that the documents were not yet binding or were drafts for discussion purposes only was deleted from the Agreement in Principle. Plaintiff also alleges that Prudential Capital had represented that the transaction would close and that the debt-financing had been "hard-circled". Plaintiff further contends that the parties had reached agreement on key terms of the transaction, the January 12 Commitment Letter had been the subject of repeated negotiations, and Plaintiff had waived the Yankee News acquisition contingencies with Defendants' knowledge and approval.

A careful review of the record discloses that there are issues of fact concerning the parties' negotiations which bear on the question of the parties' intent. In light of these factual issues, the Court cannot say as a matter of law that the context of the negotiations clearly disclose that Prudential Capital did not intend to be bound by the Agreement in Principle.

---

4. In her Order of December 17, 1992 disposing of Defendants' Motion to Dismiss the Original Complaint, Judge Beckwith determined that the intent of the parties as evidenced by the language of the Agreement in Principle demonstrated that the Agreement cannot be considered a binding contract because the language of the agreement included open terms, called for future approvals, and expressly anticipated the preparation and execution of formal documentation. She determined that since the language itself demonstrated that the parties did not intend to be bound by the Agreement in Principle, the Court need not consider the other factors outlined in *Teachers*. Order, p. 8. However, subsequent to that decision, Plaintiff amended the complaint and Defendants moved to dismiss the breach of contract claim regarding the Agreement in Principle alleged therein. In her Order disposing of that motion, Judge Beckwith noted that the issue of whether the parties intended to enter into a binding contract involved questions of fact not appropriate for resolution on a motion to dismiss. Order of July 13, 1994, Doc. no. 75 at p. 4.

### iii. Open Terms

Defendant Prudential Capital contends that because there were open terms left to negotiate, and no binding language in the Agreement in Principle, Plaintiff cannot overcome the presumption that no binding agreement exists. Defendant further contends that whether the parties had reached agreement as to the material terms of the transaction is irrelevant since The Prudential and Prudential Capital did not intend to be bound before final formal documents were executed.

Defendants have not pointed to any specific material terms that remained to be negotiated between the parties. Nor have Defendants come forward with evidence which demonstrates that there was an absence of agreement as to any of the major terms of the transaction. Under these circumstances, the existence of some open terms does not preclude a finding that the parties intended to be bound by the Agreement in Principle.

### iv. Partial Performance

Plaintiff argues that it had begun performing its obligations necessary to complete the transaction with Prudential Capital. Defendant asserts that Plaintiff has not come forward with any evidence of partial performance following the January 12, 1990 letter. As indicated by the Court in Tribune, this factor is not determinative of an intent to be bound. Id. at 502. Therefore, the absence of any evidence concerning performance by Plaintiff after January 12, 1990 is not fatal to Plaintiff's breach of contract claim.

### v. Industry Practice

With regard to the question of industry practice, Defendant has come forward only with evidence that a transaction of the nature involved in this case typically requires final, formal documentation. While it appears that final documentation was anticipated, this sheds little light on the issue of whether the parties intended to be bound by the Agreement in Principle to negotiate in good faith towards finalization of the Agreement. Neither side has come forward with evidence of industry practice which assists in resolution of this issue.

### vi. Conclusion

To conclude, there is a strong presumption that Defendants did not intend to be bound by the Agreement in Principle. However, the Court cannot say as a matter of law that Plaintiff is unable to overcome that presumption. Assuming the Agreement in Principle bound the parties to continue to negotiate in good faith, there are disputed factual issues underlying resolution of the question of whether Defendants breached their obligation. Accordingly, Defendants are not entitled to summary judgment on Plaintiff's breach of contract claim on the ground that the parties did not intend to be bound by the Agreement in Principle.

### b. Conditions Precedent

■ Defendants contend that Plaintiff's breach of contract claim must be dismissed because the conditions precedent included in the Agreement in Principle were never satisfied; therefore, no contract was formed. Among the conditions noted by Defendants are (1) approval by the Prudential Capital's Finance Committee, (2) final agreement on the terms of the transaction, (3) completion of due diligence, and (4) the execution of satisfactory legal documents. Plaintiff counters that the existence of conditions precedent is irrelevant when the situation involves a preliminary agreement wherein the parties have agreed to some terms but others remain to be negotiated.

Plaintiff's position is well-taken. Assuming the Agreement in Principle was a binding agreement, the Agreement bound the parties only to negotiate in good faith to reach a final agreement within the scope of the preliminary agreement. Whether the conditions outlined in the Agreement were satisfied is not determinative of whether Defendants fulfilled any obligation they may have had to negotiate in good faith.

### c. Statute of Frauds

■ Defendants further claim that the breach of contract claim must be dismissed because the Agreement in Principle does not satisfy the statute of frauds. In her Order of December 17, 1992, Judge Beckwith determined that the New York statute of frauds (N.Y.U.C.C. § 8–102 (McKinney's 1990)) gov-

erns in this case since the transactions between the parties involved the sale of securities. In accordance with the statute of frauds, a contract for the sale of securities is not enforceable unless there is a writing signed by the party against whom enforcement is sought sufficient to indicate that a contract has been made for the sale of a stated quantity of described securities at a stated price. Defendants allege that since Judge Beckwith has previously determined that the only writing offered by Plaintiff, the Agreement in Principle, does not establish a contractual relationship between the parties, the Agreement does not satisfy the statute of frauds.

As previously noted by this Court, Judge Beckwith issued an Order after Plaintiff had amended the complaint in which she determined that whether the Agreement in Principle constituted a binding preliminary agreement involved factual determinations which could not appropriately be made in conjunction with a motion to dismiss. For the reasons stated above, the undersigned has further determined that in light of unresolved factual issues, the question of whether the Agreement constituted a binding agreement is not appropriate for resolution on summary judgment. It follows that Defendants are not entitled to summary judgment on the ground that the Agreement in Principle does not satisfy the statute of frauds because it is not a binding contract.

### D. *Promissory Estoppel*

Plaintiff brings a claim for promissory estoppel with respect to both the Agreement in Principle and the Stock Purchase Agreement. Plaintiff alleges that throughout the transaction with Unimag, Defendants repeatedly promised that they were going to proceed with the equity and debt financing, that they had approved the transaction, that Plaintiff need not investigate other sources of financing, and that Plaintiff should waive all contingencies associated with its purchase of Yankee News. Plaintiff claims that Defendants' promises caused it to cease its search for other sources of financing and to release all contingencies associated with the Yankee News purchase. Plaintiff further contends that Defendants breached their promises.

Finally, Plaintiff alleges that because of Defendants' breach, it was forced to substitute financing which was less favorable to it and which caused it to sustain financial harm.

Defendants allege that they are entitled to summary judgment on Plaintiff's promissory estoppel claim because Plaintiff has failed to demonstrate that there was a clear and unambiguous promise; there was no reasonable reliance since the negotiations made clear that the parties' obligations were contingent upon the execution of final documents; Plaintiff did not suffer unconscionable injury; and Plaintiff's actions allegedly taken in reliance on Defendants' promises are not unequivocably referable to such promises.

In order to establish a claim based on promissory estoppel, a party must prove three elements: (1) a clear and unambiguous promise; (2) a reasonable and foreseeable reliance by the party to whom the promise is made; and (3) an injury sustained by the party asserting the estoppel by reason of his reliance. *Arcadian,* 884 F.2d at 73. In addition, where Plaintiff seeks to avoid the statute of frauds, Plaintiff must demonstrate " 'unconscionable injury', i.e injury beyond that which flows naturally (expectation damages) from the non-performance of the unenforceable agreement." *Merex A.G. v. Fairchild Weston Sys.,* 29 F.3d 821, 826 (2d Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 737, 130 L.Ed.2d 639 (1995).

Defendants allege that because Plaintiff is attempting to use the doctrine of promissory estoppel in order to circumvent the statute of frauds, Plaintiff must prove in addition to the above elements that a promise was *fraudulently* made, and that Plaintiff engaged in acts unequivocably referable to the oral promise. Defendants rely upon *Chromalloy Am. Corp. v. Universal Housing Sys.,* 495 F.Supp. 544, 551 (S.D.N.Y.1980), *aff'd. without op.,* 697 F.2d 289 (2d Cir.1982) and *Philo Smith & Co. v. Uslife Corp.,* 420 F.Supp. 1266, 1271–1272 (S.D.N.Y.1976), *aff'd.,* 554 F.2d 34 (2d Cir.1977) in support of their contention that this heightened standard applies in this case.

The Court declines to apply the heightened standard of review set forth in *Chromalloy* in

light of the fact that the United States Court of Appeals for the Second Circuit apparently has not adopted same. As noted by the district court in *Trilogy Variety Stores, Ltd. v. City Products Corp.*, 523 F.Supp. 691, 698 (S.D.N.Y.1981), the Second Circuit Court of Appeals has never accepted a requirement that fraud be included as an element of a promissory estoppel claim. Further, neither the Second Circuit nor the New York state courts have recognized a requirement that the acts of reliance be unequivocally referable to the alleged agreement. *Id.* Accordingly, the Court will apply the traditional standard in order to determine whether summary judgment on Plaintiff's promissory estoppel claim is warranted.

■ Upon a careful review of the record, the Court finds that there are genuine issues of fact underlying resolution of the question of whether the elements of a promissory estoppel claim are satisfied in this case. Accordingly, Defendants are not entitled to summary judgment on this claim.

### E. *Breach of Contract/Stock Purchase Agreement*

■ Defendant Prudential Equity claims that it is entitled to summary judgment on Plaintiff's claim of Breach of Contract stemming from the Stock Purchase Agreement on the ground that all of the conditions precedent to that contract could not be met by January 31, 1990, the closing date set forth in the Agreement. Specifically, Defendant contends that Plaintiff could not complete the debt financing on terms and conditions satisfactory to Defendant following Prudential Capital's withdrawal from the transaction on January 18, 1990. Plaintiff disputes Prudential Equity's assertion that it could not have obtained debt financing by the closing date. Assuming time was of the essence, because the question of whether Plaintiff could have obtained alternate financing is a disputed issue of fact, Defendant Prudential Equity is

not entitled to summary judgment on this claim.

### F. *Tortious Interference*

Plaintiff contends that The Prudential and/or Prudential Capital tortiously interfered with the Stock Purchase Agreement by pressuring Prudential Venture to refuse to perform its contractual obligations. Defendants contend that they are entitled to summary judgment on this claim because Plaintiff must prove that the alleged interference was motivated by malice, and Plaintiff has failed to come forward with any evidence of malice. In addition, Defendants contend that the undisputed facts show that they were privileged to interfere in order to protect their own legitimate business interests.

■ In her Order of December 17, 1992, Judge Beckwith set forth the following elements of a tortious interference claim: (1) the existence of a valid, binding contract between the Plaintiff and a third party, (2) Defendant's knowledge of that contract, (3) Defendants' intentional, malicious procurement of a breach of that contract which is not incidental to some other lawful purpose, and (4) damages caused by the breach. *Chenoweth & Faulkner, Inc. v. Metro Mobile CTS, Inc.*, No. 87 Civ–6294, 1988 WL 52777 (S.D.N.Y. May 18, 1988); *Sadowy v. Sony Corp.*, 496 F.Supp. 1071, 1079 (S.D.N.Y.1980); *Alvord & Swift v. Stewart M. Muller Constr. Co.*, 46 N.Y.2d 276, 413 N.Y.S.2d 309, 312, 385 N.E.2d 1238, 1241 (1978). (Doc. no. 36, p. 9). Judge Beckwith further noted that under New York law, a parent corporation is privileged to interfere with the contracts of its subsidiaries when necessary to protect the parent's own interests, as long as the parent does not act maliciously. *American Protein Corp. v. A.B. Volvo*, 844 F.2d 56, 63 (2d Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988); *Record Club of America, Inc. v. United Artists Records, Inc.*, 611 F.Supp. 211, 217 (S.D.N.Y.1985). (Doc. no. 36, p. 11–12).[5]

**5.** Judge Beckwith assumed for purposes of the Motion to Dismiss that the Stock Purchase Agreement was a binding agreement. She determined that Plaintiff had failed to state a claim for tortious interference as a matter of law since Plaintiff had alleged in the complaint that Pru-

dential Equity was at all relevant times a subsidiary of Prudential Insurance. (Doc. no. 36, p. 12). In her subsequent order of July 13, 1994 (Doc. no. 75), Judge Beckwith denied Defendants' Motion to Dismiss the claims in the amended complaint, including Plaintiff's tortious

■ In order to succeed on a claim of tortious interference, the claimant must establish that the defendant induced or otherwise caused a third party not to fulfill its contractual obligations to plaintiff. *Enercomp, Inc. v. McCorhill Pub., Inc.*, 873 F.2d 536, 541 (2d Cir.1989) (*citing Guard–Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 428 N.Y.S.2d 628, 631, 406 N.E.2d 445, 447 (1980)). Defendant must have engaged in "some wrongful or improper conduct". *Id.* at 542. The interference "may not be merely incidental to some other lawful purpose". *Sadowy*, 496 F.Supp. at 1080. The key inquiry is whether the interference was "without reasonable justification" or, stated otherwise, "improper". *Jews for Jesus v. Jewish Comm. Rel. Council of N.Y.*, 968 F.2d 286, 292 (2d Cir.1992). The accurate communication of one's position to another entity or individual does not generally constitute improper conduct. *Enercomp*, 873 F.2d at 542.

■ To determine whether interference with a contract was justified, several factors must be balanced. *Id.* These include the nature of the defendant's conduct, the defendant's motive, the interests of the plaintiff with which defendant interfered, the interests defendant sought to advance, the interests of society, the proximity of defendant's conduct to the interference, and the relations between the parties. *Jews for Jesus*, 968 F.2d at 292 (*citing* Restatement (Second) of Torts § 767).

■ Assuming that Prudential and Prudential Capital were not privileged to interfere with the Stock Purchase Agreement by virtue of their relationship to Prudential Venture, Defendants are nonetheless entitled to summary judgment on Plaintiff's claim of tortious interference. Plaintiff has come forward with no evidence which could support a finding that Prudential and/or Prudential Capital procured a breach of the contract by pressuring Prudential Venture to withdraw from the financing transaction. Plaintiff alleges only that Defendants have conceded that they induced or otherwise caused Prudential Venture to breach the Stock Purchase

Agreement. In support of its contention, Plaintiff relies solely on specified portions of the deposition testimony of Paul Herendeen. On those pages of the deposition designated by Plaintiff, Mr. Herendeen testified that after he and the president of his firm, Mr. Knox, learned that Prudential Capital had declined to move forward with the transaction and the reasons for that decision, and because Mr. Herendeen and Mr. Knox were not aware of any other bank that could take the place of Prudential Capital, the two men decided that Prudential Venture should withdraw from the transaction. Contrary to Plaintiff's representations, Mr. Herendeen's testimony cannot reasonably be interpreted as an admission that Prudential or Prudential Capital induced Prudential Venture to withdraw from the Stock Purchase Agreement. Rather, his testimony was that he and Mr. Knox determined to withdraw based on their knowledge of Prudential Capital's withdrawal and the reasons therefor. This testimony is insufficient to permit a finding that Prudential and/or Prudential Capital procured a breach of the Stock Purchase Agreement.

■ Even assuming that Prudential and/or Prudential Capital interfered with a contract between Plaintiff and Prudential Venture, and further assuming that Defendants were not privileged to interfere, Defendants are nonetheless entitled to summary judgment on this claim. Plaintiff challenges the economic justifications offered by Defendants for withdrawal from the financing transactions as pretextual, but offers no evidence of any other motive, improper or otherwise, for Defendants' alleged interference with the Stock Purchase Agreement. Because Plaintiff has failed to come forward with specific facts showing that there is sufficient evidence for a jury to return a verdict in Plaintiff's favor on the tortious interference claim, summary judgment in favor of Defendants on this claim is warranted.

## IV. *Conclusion*

Defendants' Motion for Summary Judgment hereby is GRANTED with respect to

---

interference claim, on the ground that factual issues were involved and a Motion to Dismiss

was not the appropriate forum for the consideration of such issues.

Plaintiff's claim of tortious interference (Count III) and Plaintiff's request for punitive damages (Count VI). The Motion for Summary Judgment hereby is DENIED as to Plaintiff's claims of breach of contract and promissory estoppel.

IT IS SO ORDERED.